**UNITED STATES of America,
Appellee,**

v.

**Maurice Anton KIENLEN, Appellant.**

**No. 10124.**

United States Court of Appeals
Tenth Circuit.

Sept. 2, 1969.

Rehearing Denied Sept. 22, 1969.

Thomas E. Joyce, Asst. U. S. Atty. (Benjamin E. Franklin, U. S. Atty., on brief), for appellee.

Stephen M. Blaes, Wichita, Kan., for appellant.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

MURRAH, Chief Judge.

On his plea of guilty to a charge of robbing a federally insured bank (Section 2113(a) and (d) Title 18, United States Code) Maurice Anton Kienlen was sentenced to 12 years imprisonment subject to parole under 18 U.S.C. § 4208(a) (2). His post-sentence motion to withdraw the guilty plea was denied by the sentencing judge. On appeal we affirmed, but left open the question of

whether he had relied on erroneous advice of appointed counsel as to the test in this circuit for mental responsibility.[1] Kienlen v. United States, 379 F.2d 20 (10th Cir.). Upon a Rule 32(d) hearing, Fed.R.Crim.P., 18 U.S.C., in the trial court after affirmance, the plea of guilty was withdrawn and a plea of not guilty was entered.

The jury was unable to agree in the first trial. The second trial, the one now being reviewed, resulted in a guilty verdict. Apparently in both trials the Wion test of criminal responsibility was properly submitted to the jury and no question in this regard is raised.

█ The first issue on appeal deals with the propriety of permitting a physician engaged in the general practice of medicine to give his opinion as to Kienlen's mental capacity under the Wion standard for mental responsibility. We know, of course, that competency of a witness to give an opinion concerning a matter of expertise lies largely within the trial court's discretion and will not be set aside on appeal in the absence of a clear showing of abuse. Cf. United States v. Wainwright, 413 F.2d 796 (10th Cir.). Indeed, we have approved the competency of a lay witness who is intimately acquainted with the accused to testify concerning his behavioral characteristics as they relate to the issue of criminal responsibility, McKenzie v. United States, 266 F.2d 524 (10th Cir.). See also Travelers Ins. Co. v. Childs, 272 F.2d 855 (2nd Cir.), and 2 Wigmore, Treatise on Evidence, § 569 (3rd Ed.1940), and cf. Phillips v. United States, 311 F.2d 204 (10th Cir.)

The general practitioner in our case testified that in the course of his practice he had frequently made preliminary diagnoses of mental illness, and as a member of the local mental health board, had worked closely with a psychiatrist-consultant a few hours each week. He was acquainted with Kienlen professionally and socially and was present with Kienlen shortly prior to Kienlen's arrest the day of the robbery and into the early morning hours of the next day.

█ On this predicate he was permitted to express his opinion that at the time he observed Kienlen he was not suffering from any "mental illness or defect"; knew what he was doing; and was capable of controlling his conduct. There was other like testimony by a qualified psychiatrist based on the Wion rule justifying submission of this issue to the jury. We find no error in the admission of the challenged testimony.

The next issue involves the admission of inculpatory statements made to enforcement agents in the early morning hours following Kienlen's arrest. This admission is challenged on the basis that Kienlen was not informed of his right to have counsel present during the interrogation as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The two federal agents testified that Agent Radford told Kienlen he had the right to remain silent and that he did not have to give them any statement, and if he did, it could be used against him in court. He was also advised that he had a right to contact, call or talk to a lawyer or anyone else, before talking to the agents, and if he couldn't afford an attorney, "he would be furnished one by the Court." But the agent specifically testified that he did not tell Kienlen that "he had the right to have a lawyer present when I interviewed him." They further testified that Kienlen specifically said he didn't need a lawyer and that he wanted "to get this over with." The trial judge thought this sufficient, admitted the statements, and instructed the jury on voluntariness.

It is true, as the government suggests, that under our decision in Bond v. United States, 397 F.2d 162 (10th Cir.), cert. denied 393 U.S. 1035, 89 S.Ct. 652, 21 L.Ed.2d 579, no express declination

---

1. The court appointed counsel advised Kienlen that the test was the M'Naughten Rule rather than that of Wion v. United States, 325 F.2d 420 (10th Cir.).

of the right to counsel is requisite to a valid waiver; that it may be shown by the circumstances of the case. But this is not the point in our case. Miranda plainly says that "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege" and that "the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." 384 U.S. at 469–470, 86 S.Ct. at 1625–1626. Cf. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). But this, too, does not settle our question. The applicability of Miranda in light of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) is determinative. There, the Supreme Court decreed that the dictates of Miranda were prospective only and that it "should apply only to cases commenced after" Miranda was decided on June 13, 1966. 384 U.S. at 733, 86 S.Ct. at 1781.

■ Kienlen was arrested on December 9, 1965 and originally pleaded guilty and was sentenced on May 27, 1966. On May 25, 1967, the sentence was affirmed by this court. Kienlen v. United States, supra. After vacation of the sentence by the trial court under Rule 32(d), he was tried and convicted in April, 1968. This question is now settled by Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), where the Court held that the dictates of Miranda do not apply on the retrial of a case originally tried prior to Miranda. The rationale of Jenkins clearly negates the applicability of Miranda to Kienlen's trial. The Court observed that "The burden would be particularly onerous where an investigation was closed years prior to a retrial because law enforcement officials relied in good faith upon a strongly incriminating statement, admissible at the first trial, to provide the cornerstone of the prosecution's case." [footnotes omitted]

395 U.S. at 220, 89 S.Ct. at 1681. Likewise, the burden would be excessive to apply the new standards to interrogations occurring prior to Miranda where, as here, the trial was delayed until long after that decision by a guilty plea and appeal. The pre-Miranda test for voluntariness was available to Kienlen and was properly applied. Thus judged, we find no error in the admission of these statements.

The final question has also now been authoritatively settled. In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court held that a more severe sentence on retrial was constitutionally permissible provided that, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." 395 U.S. at 726, 89 S.Ct. at 2081.

On his original guilty plea, Kienlen was sentenced to 12 years imprisonment subject to parole under 18 U.S.C. § 4208 (a) (2). On the jury verdict, the judge imposed a sentence of 18 years. In imposing this sentence the trial judge, as if anticipating Pearce, observed:

"I certainly gained the impression [at the trial] and came to believe and now believe, and largely this is from the testimony of the defendant's witnesses, his mother and his former wife, that this defendant is a brutal, assaultive type, that this information, if I had known it—I don't want to say that there wasn't any indication of that in the earlier pre-sentence report, but to read something in a cold pre-sentence report and to hear the witness, one by deposition and the other testifying from the stand, together with all of the other information that has come to me since the original sentence was imposed, I have come to the conclusion that the sentence imposed on May 27, 1966 * * * was a lesser sentence than this defendant deserved, so the sentence to be imposed today will be a greater sentence."

After a brief colloquy, he further noted, "I want it clearly understood that what I have said with respect to increasing the sentence or, rather, imposing a more severe sentence than I had before, is not to be taken by anyone as punishment for the exercise of constitutional rights by this defendant."

■ ■ In our judgment, this meets the Pearce standard. Naturally, the statement that the trial judge was not penalizing the defendant for exercising his constitutional right to appeal is not conclusive. But it is indicative of the sentencing climate. The decision was clear and rational. Finding this sentence altogether compatible with Pearce, we need not consider the possible retroactivity of Pearce. See Moon v. Maryland, cert. granted 395 U.S. 975, 89 S.Ct. 2135, 23 L.Ed.2d 764 (1969) on the issue of Pearce's retroactivity.

The judgment is affirmed.