UNITED STATES of America,
Plaintiff-Appellee,

v.

Louis Eugene CUNNINGHAM, and
John Hecht, Defendants-Appellants.

No. 75–1287.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1975.

Decided Feb. 9, 1976.

N. C. Deday LaRene, Detroit, Mich., for defendants-appellants.

Ralph B. Guy, Jr., U. S. Atty., Richard L. Delonis, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before WEICK and MILLER, Circuit Judges, and CECIL, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal by defendants Cunningham and Hecht from their jury convictions for possession with intent to distribute and distribution of approximately 800 pounds of marijuana in violation of 21 U.S.C. Sec. 841(a)(1).

Defendants were arrested as they completed delivery of a large quantity of marijuana to two undercover officers who, acting on information received from an informer, had posed as buyers. Subsequently, they were indicted on five counts of violating 21 U.S.C. Sec. 841(a)(1). Defendants agreed with the government that they would plead guilty to the first count on condition that the government would then move for dismissal of the remaining counts. Accordingly, after guilty pleas were entered and accepted, the court dismissed the remaining counts. Sentences of two years were imposed as to Cunningham and one year as to Hecht, with a two year term of special parole in each case. Defense counsel immediately moved for leave to withdraw the pleas, citing past practice of the court and failure of the court to advise defendants before sentencing of the possibility of special parole terms. The court granted the motion to set aside the pleas, apparently because of its failure on sentencing to advise defendants as to the possibility of receiving special parole terms under the narcotics statute (21 U.S.C. Sec. 841(b)).

At trial, the defendants relied solely on an entrapment defense. During trial the government was permitted to cross-examine Cunningham on the basis of information received through government intelligence reports, not offered in evidence, implying Cunningham's past involvement in marijuana dealing. Defense counsel objected on the ground that information from this line of questioning was irrelevant and that the contents of the intelligence reports were inadmissible.

The jury returned guilty verdicts against both defendants. The court imposed sentences of three years imprisonment on Cunningham and two years imprisonment on Hecht with special parole terms of two years in each case. The court cited its impression derived from the more detailed record after trial that defendants were deeply involved in the sale and distribution of narcotics as its reason for imposition of the enhanced sentences.

Two issues raised by defendants on appeal merit discussion. First, defendants contend that they were denied a fair trial by improper cross-examination of defendant Cunningham upon information derived from the reports. Cunningham was thus asked about an occasion when two small bags of marijuana were found in the possession of one of the passengers of a plane which Cunningham had just piloted on a short trip. He was also asked about his receipt of two suitcases, his loan of a car to an acquaintance, and his acquaintance with or knowledge of various individuals. Each line of questioning was dropped when Cunningham denied knowledge of the event or person constituting the subject of the question.

After repeated objections by defense counsel that these questions were irrelevant and that no basis for them had been shown, the government explained, out of the presence of the jury, that the questions were based on the "intelligence reports", portions of which were read into the record. Various sources, including confidential government informers and other unidentified sources, had furnished the information for the reports. The questions asked were designed to develop testimony about several inci-

dents insinuating that defendant Cunningham had previously been involved in marijuana dealing. For example, the questions about the plane trip and about Cunningham's acquaintances were supposed to show that Cunningham was associated with persons involved in the marijuana trade and, thus, presumably, that Cunningham was also involved. The questions about the suitcases were intended to suggest that the suitcases contained money received in exchange for a shipment of marijuana. The government hoped that the questions about the car would elicit testimony indicating that Cunningham had allowed his car to be used in the sale of marijuana. The court overruled defendants' objections to this line of cross-examination and denied motions for a new trial based in part on the error asserted in permitting the cross-examination.

■■■ In determining the propriety of the cross-examination, we must first consider the applicability of rules which have evolved regarding the admissibility of evidence when a defendant asserts an entrapment defense. When a defendant chooses to rely on a defense of entrapment, the government is then entitled to show his predisposition to commit the crime charged. *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Such a showing may involve a "searching inquiry" into the defendant's prior conduct. *Sorrells v. United States, supra* at 451, 53 S.Ct. 210. Accordingly, courts have relaxed the strict rules of evidence to some extent in admitting hearsay and other evidence of defendant's reputation and prior misconduct to prove his predisposition to commit the crime. *See, e. g., United States v. Simon*, 488 F.2d 133 (5th Cir. 1973); *United States v. Stills*, 476 F.2d 592 (5th Cir. 1973); *United States v. Owens*, 346 F.2d 329 (7th Cir.), *cert. denied*, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965); *United States v. Cooper*, 321 F.2d 456 (6th Cir. 1963). However, the scope of the inquiry into a defendant's predisposi-

tion is not without limits. *See, e. g., United States v. Hairrell*, 521 F.2d 1264 (6th Cir. 1975); *United States v. Ambrose*, 483 F.2d 742 (6th Cir. 1973); *United States v. Johnston,* 426 F.2d 112 (7th Cir. 1970); *Hansford v. United States*, 112 U.S.App.D.C. 359, 303 F.2d 219 (1962) (en banc); *Whiting v. United States*, 296 F.2d 512 (1st Cir. 1961). As our Court said in *United States v. Ambrose, supra* at 748:

We agree with appellant that permitting the prosecution to make a searching inquiry into the predisposition of a defendant who raises the defense of entrapment does not thereby provide a license for the prosecution to roam at will through his past, either by the introduction of extrinsic evidence or by the use of cross-examination. The Government is constrained by familiar rules of relevancy and competency, by policies against undue prejudice or unfair surprise, and by considerations pertaining to limitation of the range of issues with which juries must grapple, the trial judge's ability to control the conduct of the trial, and the confinement of cross-examination to matters raised on direct.

The types of evidence which courts have found to be inadmissible to prove predisposition are quite similar in character to the information contained in the government intelligence reports. In *Ambrose* this Court found that the testimony of a government agent that defendant was first suspected of the crime of which he was charged because his name appeared on a list of those suspected of alcohol and tobacco law violations was not admissible as evidence of reputation and predisposition because of its unreliability. The agent admitted that the information for the list came from bootleggers, investigators, citizens, and informers and that some of the information was not reliable.

More recently, this Court in *United States v. Hairrell, supra* at 1267–68, found that evidence, obtained through cross-examination of the defendant, about a prior conviction for stealing a

television set, about a pending indictment for possession of a stolen motorcycle, and about the defendant's association with gambling and prostitution was not relevant to show defendant's predisposition to transfer and deliver counterfeit money. The Court noted that "[t]he defense of entrapment does not give the prosecution the right to put a defendant's general character into issue or to convey to the jury the impression that he is an evil man . . . ."

In *Whiting v. United States, supra,* the evidence found to be inadmissible was testimony of a police officer that he received anonymous telephone calls to the effect that defendant was involved in the narcotics traffic and testimony of another officer and a government agent that they had received similar information from informers. The court found the evidence to be inadmissible because it was highly unreliable and because defendant had no fair opportunity to rebut it.

In *Hansford, supra,* an officer testified that he had witnessed a sale of narcotics made by defendant several months prior to his arrest on the charge in the case on appeal. Because this testimony was uncorroborated by witnesses or any contemporaneous report of the incident and because the incident did not result in an arrest, indictment, or conviction, the court held that it was "so prejudicial to the accused in his defense of the charge on trial as to outweigh the probative value of the testimony on the issue of predisposition." 303 F.2d at 226. The government in *Johnston, supra,* introduced testimony of a police officer that an informer, who had died prior to trial, had told him several years before trial that the defendant had sold him a quantity of morphine. Defendant argued that this evidence should not be admitted to show predisposition because the incident related by the informer dealt with a crime different from that charged, i. e., dealing in hard narcotics and stolen merchandise, because there was no other evidence of any conviction or other evidence of narcotics dealing,

and because the incident was so remote in time as to make the hearsay unreliable. The court agreed, citing *Hansford, supra.*

■ In this case the information sought to be elicited on cross-examination was quite similar to the evidence held inadmissible in the cases we have just discussed. Much of the information came from informers whose reliability was not shown. The contents of the reports constituted merely the suspicions of law enforcement officials as did the evidence introduced by the government in *Whiting, supra,* and *Ambrose, supra.* Moreover, the incidents related in the reports did not lead to any arrest, indictment, or conviction. In addition, some of the contents of the reports about which the government attempted to question Cunningham were not even clearly relevant on the issue of predisposition, as the evidence in *Hairrell, supra,* was not relevant. The fact that marijuana was found in the possession of a passenger of a plane which Cunningham piloted or with whom he was acquainted would hardly be sufficient to show that Cunningham was dealing in marijuana prior to his arrest on the present charge.

We are convinced that the cross-examination based on the reports was not proper here since the information disclosed was almost entirely based upon hearsay, suspicion, unverified sources and unreliable innuendo. *Cf. United States v. Hairrell,* 521 F.2d 1264, 1267–68 (6th Cir. 1975); *United States v. Willis,* 482 F.2d 1034, 1037 (8th Cir. 1973); *United States v. Sawyer,* 469 F.2d 450, 452 (2d Cir. 1972); *Robbins v. Small III,* 371 F.2d 793, 795 (1st Cir. 1967); *Cutshall v. United States,* 252 F.2d 677 (6th Cir. 1958); *McKenna v. United States,* 232 F.2d 431, 437 (8th Cir. 1956); *Barnett v. Terminal Railroad Association of St. Louis,* 228 F.2d 756, 758–59 (8th Cir. 1956).

■ Cross-examination may not appropriately be used as a vehicle for getting improper and inadmissible evidence before the jury. Our Court in *Ambrose,*

*supra* at 748, noted that the policies which protect a defendant from an unlimited inquiry into his predisposition apply both to the prosecution's introduction of extrinsic evidence and to the use of cross-examination.

Finally, we do not view this case as one in which the prejudice was so minimal that reversal of the conviction is not required. Defendants relied solely on the entrapment defense. The questions alone (even though for the most part they drew negative answers) were clearly prejudicial as to Cunningham because they strongly suggested that the government was in possession of information reflecting Cunningham's predisposition to commit the crime with which he was charged. While the questions were directed to Cunningham, Hecht was also prejudiced in his defense, as defendants were acting together in delivering the marijuana. If predisposition on the part of Cunningham was found, the jury must be assumed to have concluded that Cunningham alone, and not government agents, influenced Hecht to engage in the criminal activity.

■ Defendants further argue that the imposition of sentences after trial which were more severe than the sentences imposed when the guilty pleas were entered was in conflict with the ruling in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce*, the Supreme Court held that due process requires that a defendant must not be penalized for asserting his right to a new trial by the imposition of a longer sentence than he received at the first trial. If a longer sentence is imposed after the second trial, the reasons for the increased sentence must affirmatively appear on the record and those reasons "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081.

This argument requires us to consider whether the principles of *Pearce* are apposite here where the court allowed withdrawal of guilty pleas after sentencing and then, after trial, increased the sentences.

■ Defendants were allowed to withdraw their guilty pleas under Rule 32 of the Federal Rules of Criminal Procedure.[1] While the defendants may have been entitled to withdrawal of the pleas as a matter of right,[2] as the defendant in *Pearce* was entitled to retrial, we do not believe that this case is sufficiently analogous to the retrial situation to require application of the *Pearce* rationale.

Defendants' argument is correct that *Pearce* does not allow increased sentences on retrial based on amplified knowledge about a defendant's criminal activity which occurred before the first trial. *See Barnes v. United States*, 136 U.S.App.D.C. 171, 419 F.2d 753 (1969); *Pinkard v. Neil*, 311 F.Supp. 711 (M.D. Tenn. 1970).

It is noteworthy, however, that the language in *Pearce* concerning the permissible bases for an increased sentence was directed to the retrial situation and not to the process of sentencing after

---

1. Rule 32 of the Federal Rules of Criminal Procedure provides:

     *   *   *   *   *   *

     (*d*) *Withdrawal of Plea of Guilty.* A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

     *   *   *   *   *   *

2. Normally, withdrawal under Rule 32 is a matter of judicial discretion. However, it seems likely that defendants were entitled to withdraw their pleas in this case because the district court did not comply with Rule 11, Federal Rules of Criminal Procedure, in failing to inform defendants of the possibility of special parole terms as provided by Sec. 841(b). *See United States v. Wolak, Jr.*, 510 F.2d 164 (6th Cir. 1975); *Harris v. United States*, 426 F.2d 99 (6th Cir. 1970). If the error had not been corrected at this point in the proceedings, it could have been raised through motion under 28 U.S.C. Sec. 2255.

withdrawal of pleas of guilty. In its more recent decision in *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974), the Court commented upon its *Pearce* ruling as follows:

> The lesson that emerges from *Pearce, Colten* [*Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)], and *Chaffin* [*Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)] is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness." Unlike the circumstances presented by those cases, however, in the situation here the central figure is not the judge or the jury, but the prosecutor. The question is whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case.

We find nothing in the record of the present case to indicate "a realistic likelihood of vindictiveness" on the part of the trial judge in imposing the increased sentences after permitting withdrawal of the pleas of guilty. The increased sentences after the pleas were withdrawn and the judge had been afforded for the first time the advantage of a full scale trial on the facts were not excessive or exorbitant. The slight increase falls far short of evidencing a vindictive attitude or desire to punish the defendants for withdrawing their pleas of guilty and going to trial. Moreover, the increase in the sentences is clearly explainable on the grounds stated in our recent opinion in *United States v. Derrick*, 519 F.2d 1 (6th Cir. 1975):

Another factor which we see as almost inevitably influencing the decision of a trial judge is that in a plea of guilty, the crime pleaded is understood only as related in somewhat sterile fashion through the plea taking process or through a printed narration in the presentence report. The sentencing following a trial upon the merits, on the other hand, sees the trial judge in possession not only of more of the detailed facts of the offense itself, but of the flavor of the event and the impact upon any victims. It is for that reason a more real and accurate appraisal of the circumstances which brought the defendant to the bar of justice, and almost inevitably this added knowledge will affect the judge's consideration of what penalty appears most appropriate. This can, of course, work to the benefit or the detriment of the defendant according to the degree of culpability shown by the proofs.

We have no reason to attribute the increased sentences to anything other than the sentencing judge's greater knowledge and better understanding acquired after hearing the full disclosure of the facts at the trial on the merits. To preclude his consideration of the more complete development of the facts in formulating the sentence to be imposed would not, in our view, subserve the best interests of criminal justice. We do not consider in point here the recent decision of the Court of Appeals for the Fifth Circuit in *United States v. Floyd*, 519 F.2d 1031 (1975).

We have considered other contentions advanced by defendants on appeal and find them to be without merit.

Reversed and remanded for new trial consistent with this opinion.