STATE of Wisconsin, Plaintiff-Respondent-Cross-Petitioner,

v.

Larry STUBBENDICK, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81–908–CR. Argued December 2, 1982.—*
*Decided February 3, 1983.*

(Also reported in 329 N.W.2d 399.)

For the defendant-petitioner there were briefs by *Raymond E. Krek* and *Krek, Ebbott & Friederichs, S.C.,* Jefferson, and oral argument by *Raymond E. Krek.*

For the plaintiff-respondent-cross-petitioner the cause was argued by *Chris Heikenen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

STEINMETZ, J.   The defendant was sentenced for six years as a result of a plea bargained no contest plea to second degree sexual assault.  The issue is whether upon vacating that plea and sentence, the judge properly increased the sentence for a second conviction on the same charge.  Also at issue is whether the judge is limited as to the sentence that may be imposed for a conviction of burglary which was a related offense to the sexual assault charge, but which had been dismissed as a result of the same plea bargain and then reinstated.

Larry Stubbendick was originally charged with burglary and second degree sexual assault arising from an incident in which the defendant entered the victim's premises without consent through a second-story patio

door and sexually assaulted her. By the terms of a plea bargain agreement reached April 18, 1979, the defendant originally pled no contest to the charge of second degree sexual assault. In return the state made no recommendation as to sentence and dismissed the additional pending charge of burglary. A judgment of conviction was rendered on July 12, 1979, by the Honorable Mark J. Farnum, circuit court of Rock county, and entered on July 16, 1979. The court imposed a six year sentence, based solely on the sexual assault charge.

In a decision entered June 26, 1980, the trial court granted the defendant's motion to withdraw his plea. The motion was granted on the grounds that at the time the defendant entered his plea, he was unaware of the mental state requirement of second degree sexual assault. The court vacated the conviction and sentence, and also the previously dismissed burglary charge was reinstated.

The defendant was tried by a jury on both counts, burglary and second degree sexual assault, on October 28–31, 1980, again in Rock county circuit court before Judge Farnum. The jury found the defendant guilty of burglary but was unable to reach a verdict on second degree sexual assault. Sentencing on the conviction for the burglary charge was withheld pending another trial on the sexual assault charge. On December 15–17, 1980, the defendant was tried before a second jury on the sexual assault charge and the jury returned a guilty verdict.

The defendant was sentenced once again on January 8, 1981, by Judge Farnum. The judge sentenced the defendant to concurrent terms of ten years on the burglary and sexual assault charges, less credit for time previously served.

On March 24, 1981, the defendant filed a motion before Judge Farnum requesting modification of his sentence. That motion was denied. The defendant appealed.

The court of appeals held, in an unpublished opinion filed March 26, 1982, that the increase of sentence from six to ten years for the second degree sexual assault charge was not based upon objective facts which were unknown to the trial court at the time of the first sentencing, and reduced the defendant's sentence for sexual assault to six years. However, the court of appeals affirmed the ten year sentence for burglary since that was an original sentence and not a resentence. The court of appeals did not find actual vindictiveness on the part of the trial court in either sentence.

We accepted the defendant's petition for review and also the state's petition for cross-review on June 1, 1982.

In *State v. Leonard,* 39 Wis. 2d 461, 159 N.W.2d 577 (1968), this court first addressed the problem of resentencing after the successful pursuit of postconviction remedies. The rule adopted by the court was as follows:

"Hereafter, on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence." *Id.* at 473.

One year later, the United States Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711 (1969), delineated the scope of judicial discretion in resentencing. The court stated:

"We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct,

and mental and moral propensities.' *Williams v. New York,* 337 U.S. 241, 245. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams v. New York, supra,* that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.' " *Id.* at 723.

The *Pearce* majority then considered the impact of the due process clause of the Fourteenth Amendment on re-sentencing. The court stated:

"It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." *Id.* at 723–24.

The court continued:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725.

The rule of *North Carolina v. Pearce* appears at 395 U.S. 726:

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial,

the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

This court considered *North Carolina v. Pearce* in *Denny v. State,* 47 Wis. 2d 541, 544, 178 N.W.2d 38 (1970) and recognized that *Pearce* contained an ambiguity regarding what constituted a proper objective factor. One portion of *Pearce* states that the reasons for imposing a harsher sentence must be based on "identifiable conduct . . . occurring after the time of the original sentencing proceeding." 395 U.S. at 726. Yet another section of the opinion says that a judge may increase the sentence "in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" 395 U.S. at 723.

We adopted Justice White's concurrence to resolve this ambiguity. Justice White stated a trial judge could consider "any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding." 395 U.S. at 751 (J. White, concurring in part), quoted in *Denny v. State,* 47 Wis. 2d at 545–46. Other courts have resolved the *Pearce* ambiguity similarly. *See e.g., United States v. Hayes,* 676 F.2d 1359 (11th Cir. 1982), *petition for cert. filed on other issue,* 51 U.S.L.W. 3341 (U.S. Sept. 29, 1982) (No. 82–684).

In summary, the *Pearce-Denny* rule is designed to prevent a trial judge from being vindictive against a defendant for exercising his rights. The possibility of vindictiveness is eliminated since a trial judge can increase a sentence only if new objective factors can justify a more severe sentence. A trial judge is allowed to con-

sider all events occurring subsequent to the first sentence or not known by the court at the time of the initial sentence.

Subsequent United States Supreme Court cases have developed the principles set forth in *Pearce*.[1] Most recently in *United States v. Goodwin*, —— U.S. ——, 102 S. Ct. 2485 (1982), the court for the first time labeled the rule in *Pearce* as a presumption of vindictiveness. This characterization in *Pearce* is consistent with this state's doctrine of abuse of sentencing discretion. This state has long required that reasons be stated on the record for imposing a particular sentence, whether it be an original sentence or a resentence. *McCleary v. State,* 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). For a trial judge not to state sufficient reasons for any sentence constitutes an abuse of discretion. This requirement eliminates the possibility of a judge being vindictive. Furthermore, the *Leonard* and *Denny* decisions limit the scope of that discretion when resentencing by requiring that the reasons stated be objective and identifiable. Where a sentencing or resentencing record exhibits actual vindictiveness, that too would constitute an abuse of discretion.

---

[1] In *Colten v. Kentucky,* 407 U.S. 104 (1972), the court held that the *Pearce* rule does not apply to harsher sentences imposed after a trial *de novo* in states having a two-tier trial court system. The court noted that the possibility of vindictiveness was not inherent in Kentucky's two-tier system since the second sentence was imposed by a different court that was not asked to correct itself. *Id.* at 117. In *Chaffin v. Stynchcombe,* 412 U.S. 17 (1973), the court held that the *Pearce* resentencing restraints are inapplicable when the second sentence is imposed on retrial by a jury. The court found the likelihood of vindictiveness *de minimis* when resentencing was performed by a jury since the jury had no motive to engage in self-vindication, had no knowledge of the prior sentence, and was unlikely to be sensitive to institutional interests that may cause more severe resentences by a judge desirous of discouraging what he regards as meritless appeals. *Id.* at 26–27.

In this case, when sentenced after trial, the defendant received an additional four years on the sexual assault charge and an original ten year sentence on the burglary charge. We will consider the propriety of each sentence separately.

Regarding the enhanced sexual assault sentence, there are essentially three newly known objective factors that justify the four year increase. They include: (1) leniency based on a plea agreement is not necessarily applicable at a resentencing after trial; (2) defendant's poor prospects for rehabilitation; and (3) amplified knowledge of the defendant's criminal activity obtained from the trial. Each factor will be discussed.

One consideration stated by the judge was that he extended leniency at the initial sentencing as a result of the plea agreement. The United States Supreme Court has accepted the practice of extending leniency in plea negotiations as a legitimate process. In *Corbitt v. New Jersey*, 439 U.S. 212, 223 (1978), the court stated: "[I]t is not forbidden to extend a proper degree of leniency in return for guilty pleas."

The judge at the initial sentencing described the crime as extreme and vicious in its nature. The defendant argues that since the judge gave a six year sentence for a "vicious-extreme" crime on the plea bargain, no leniency was in fact extended. Moreover, the defendant notes that at the first sentencing, the judge made no statement concerning leniency. Nonetheless, we believe that leniency was extended at the initial sentencing. Before the plea bargain, the defendant faced an exposure of 20 years, ten years for the burglary count and ten years for the sexual assault count. Receiving only a six year sentence for such a "vicious-extreme" crime can certainly be partially attributable to an extension of leniency.[2]

---

[2] Since this factor of leniency does not concern any new information concerning the defendant's conduct, technically speaking it

Related to the factor of leniency granted on the plea bargain sentence is the judge's finding that the defendant lacked penitence and remorse for having committed the offenses. At resentencing, the judge commented:

"I feel that you obtained your new trial almost fraudulently, Mr. Stubbendick. Now, you can blame it on counsel, counsel can take the blame if they want to, maybe, but you are accountable for what's done and that reflects, then, on my belief in your penitence and remorse because the motion for new trial was predicated on your intoxication, if I recall correctly, or at least on your total lack of memory. And when we tried the case, both times, there wasn't an iota of testimony that had any bearing whatsoever on your mental capacity to commit the crime. . . .

"So under those circumstances, the Court feels that there was some misleading. While I can't hold you responsible for the total trial tactics employed, but to me it indicates a degree of lack of good faith in withdrawal of a plea, because if your mental state was not sufficiently material to be presented as a defense, then it certainly was not sufficiently material as a premise for withdrawal of plea under the circumstances. And I feel it reflects directly on the question of your penitence."

Defendant argues this statement evidences vindictiveness on the trial judge's part for punishing the defendant for withdrawing his plea based on his unawareness of the mental state requirement of the crime, and subsequently not presenting any evidence concerning his mental state at trial. However, this position ignores the fact that the statement relates only to the defendant's lack of penitence.

At the first sentencing, the defendant expressed remorse and penitence about his activities. After the judge had the opportunity to observe the defendant during two

is not a factor as contemplated by the *Pearce* and *Denny* decisions. Nonetheless, a statement in the record regarding this consideration negates the possibility of judicial vindictiveness, which is the paramount concern of *Pearce* and *Denny*.

trials, he became convinced that any remorse expressed by the defendant was feigned. Any leniency based on remorse was therefore no longer appropriate at the resentencing.

Since the defendant withdrew his plea, any leniency based on the plea need not be extended at resentencing. To hold otherwise, would permit defendants to make tentative pleas of guilty to obtain a ceiling for sentencing upon subsequent trials or pleas. In addition, defendants would be encouraged to set aside plea agreements because they would have everything to gain and nothing to lose by going to trial. The judge was correct to consider the factor of leniency present in a plea agreement at the resentencing.

A second factor was that at resentencing, the judge did not believe the defendant to be a good candidate for rehabilitation. In the presentence report for the second sentencing, the judge was informed:

"Since being received at the institution Larry had received no condition reports and has had excellent adjustment. In June, 1980, Larry was granted medium-out custody at the request of his job supervisor in the electrical maintenance and carpentry department. Such custody classification calls for retention in WCI, but does allow special privileges for work detail assignments off the grounds of the institution proper. The June, 1980, Institution Program Review indicates that Larry had been involved in a counseling program, but dropped out after one month because he disagreed with the particular counseling philosophy."

While the first two items are favorable to the defendant, the last item is not. The probation and parole agent working for the Bureau of Corrections in Rock county testified in regard to this last item as follows:

"Q. Would you tell the Court what reasons Larry gave you for dropping out of that program?

"A. Larry indicated to me in a contact down at the County Jail that he dropped out of that counseling program due to the fact that they only wanted him to talk about a second-degree sexual assault charge and no other problems he may be encountering or may have encountered. He felt that was inappropriate and wanted to deal with total emotional difficulties as opposed to just a second-degree sexual assault charge."

Regarding this information, the court stated:

"You are not the person to judge the validity of a program that an expert in the field is putting you through directed toward your rehabilitation. And the fact that you will second guess these people rather than cooperate and accept has a very definite bearing on your ability to be appropriately rehabilitated."

The judge could properly base the increased sentence partially on this factor. The information demonstrated that the defendant was not cooperating with counseling efforts, and was therefore a poor candidate for rehabilitation.

A final reason justifying the longer sentence was the amplified knowledge of the crime gleaned from the trial by the judge. He stated at the resentencing:

"Now, I have heard the evidence for the first time, I have seen the victim. I have heard the witnesses. It's a lot different than a cold report that I get from the District Attorney or from what's embodied in the presentence report."

Other courts have held that *Pearce* allows an increased sentence based on enhanced knowledge obtained from trial of the defendant's criminal activity. *United States v. Kienlen*, 415 F.2d 557 (10th Cir. 1969); *State v. Taylor*, 22 Wash. App. 308, 589 P.2d 1250 (1979); *United States v. Cunningham*, 529 F.2d 884 (6th Cir. 1976). The Sixth Circuit in *Cunningham* noted:

"Another factor which we see as almost inevitably influencing the decision of a trial judge is that in a plea of guilty, the crime pleaded is understood only as related in somewhat sterile fashion through the plea taking process or through a printed narration in the presentence report. The sentencing following a trial upon the merits, on the other hand, sees the trial judge in possession not only of more of the detailed facts of the offense itself, but of the flavor of the event and the impact upon any victims. It is for that reason a more real and accurate appraisal of the circumstances which brought the defendant to the bar of justice, and almost inevitably this added knowledge will affect the judge's consideration of what penalty appears most appropriate. This can, of course, work to the benefit or the detriment of the defendant according to the degree of culpability shown by the proofs." *Id.* at 889.

The court of appeals, relying on *United States v. Tucker,* 581 F.2d 602 (7th Cir. 1978), rejected this distinction between live testimony and a cold report as justification for a harsher sentence. *Tucker* is distinguishable on the basis that in that case the increased sentence was based on additional knowledge obtained at a *second* trial, and not from an *initial* trial after a vacated plea. We find this distinction significant. In a retrial situation, the judge has already been afforded a full-scale trial on the facts. The same is not true at a first trial subsequent to a withdrawn plea. *United States v. Cunningham,* 529 F.2d at 888–89.

In summary, we conclude that the defendant's increased sentence on the sexual assault charge was properly based on three objective factors. First, leniency in sentencing extended pursuant to a plea agreement need not carry over to sentencing after trial. Second, the record demonstrated the defendant's reduced chances for rehabilitation. Finally, the judge enhanced his knowledge of the circumstances surrounding the crime at trial.

As for the original ten year burglary sentence, the defendant contends that the court of appeals erred by only applying the prophylactic rules of *Pearce* and *Denny* to the sexual assault sentence and not to the burglary sentence. The court of appeals held that since the burglary sentence was an original one, the protections of *Pearce* and *Denny* do not apply.[3] The defendant asserts that since the burglary arose out of the same course of conduct as the sexual assault, the protections of *Pearce* and *Denny* are applicable. Defendant finds support for his argument in 3 ABA Standards for Criminal Justice, *Sentencing Alternatives and Procedures* Standard 18–4.9 at 18.323 (1980), relating to resentencing, which provides as follows:

"(a) Except as authorized in paragraph (b), the new sentence imposed at a resentencing should not be more severe than the original sentence less time already served. Because the appearance of justice is maximized by imposing such a ceiling, this limitation should be observed regardless of whether
". . .
"(ii) the offense involved is the *same offense or a different offense based on the same conduct* . . . ." (Emphasis added.)

It is impossible to apply the rule of *Pearce-Denny* to the burglary conviction since there never was a previous sentence imposed for the burglary. In fact, pursuant to the original plea bargain agreement, the burglary charge was dismissed. Literally, *Pearce* refers only to the resentencing setting and the relevancy of new objective information learned by the judge since the first sentence was imposed. *Pearce* cannot be applied because there are no *new* factors to consider at an original sentencing.

---

[3] There is no issue in this case that the reissuance of the burglary charge was invalid due to prosecutorial vindictiveness. *See Blackledge v. Perry*, 417 U.S. 21 (1974), *United States v. Anderson*, 514 F.2d 583 (7th Cir. 1975).

While such reasoning may initially appear unreasonably formalistic, combined sentences are not to be viewed as package deals. Each sentence is for a separate and distinct criminal offense.

Nonetheless, we recognize that judicial vindictiveness could easily be concealed by handing down a heavy or maximum sentence on the reinstated charge (burglary), while leaving the original sentence of the related offense (sexual assault) intact. This is possible irrespective of whether the charges are related to a single episode of criminal conduct. In order to eliminate the vindictiveness concerns of *Pearce-Denny,* the judge must therefore state on the record: (1) new objective information learned since sentencing the defendant on the other charges, related or not, and, (2) give sufficient reasons for the length of the original sentence imposed for the reinstated charge as required by *McCleary.* The fulfillment of these requirements will act as a guide on a judge's sentencing discretion.

In this case, the new objective factors considered for increasing the sexual assault sentence are equally relevant to the burglary sentence. We recognize that although these factors are not new as they relate to the burglary charge, they are persuasive evidence of the lack of vindictiveness in the burglary sentence.

In addition to these objective factors, the judge also properly considered the severe nature of the burglary. When imposing the sentence, the judge remarked:

"I think that the two incidents, the two crimes are distinct in their nature in that there was not only a violation of the victim's property rights and invasion of her home, there was also a separate invasion of her body. This is not the case where the victim might have been walking down the street in a certain neighborhood or part of town and have been sexually assaulted. This is a case where the victim is now in a situation where it

took place in her own home and it was a grievous invasion of her right to privacy."

This statement is devoid of vindictiveness and accurately portrays the judge's reasoning for the ten year sentence. This defendant lived in the same residence complex as the victim. He obviously, with his demonstrated modus operandi, deliberately chose to attack her in the privacy of her living quarters. She will now no longer feel completely secure in her own home. The law respects the sanctity of a person's dwelling. No longer will this victim be able to relax and feel secure in the one area where all citizens should be able to feel safe, that is, in her home. She has been attacked in that "safe" area and will always have doubts concerning her security. This was not a burglary resulting in the loss of physical property, but a burglary perpetrated to violate a person's physical security. The sentence for burglary carried no indication of vindictiveness but was rather the judge's attitude that society needs the greatest protection from acts of this nature.

Even where a trial judge states new objective factors on the record when resentencing a defendant, the possibility of an abuse of discretion still exists if the record itself demonstrates vindictiveness. This court has examined the resentencing transcript. We admit that some of the judge's words, taken out of context, could arguably support allegations of vindictiveness. However, taken as a whole, we find no actual vindictiveness present in the record.

Since we find that the increased sentence for sexual assault and original sentence for burglary were based on objective information that was proper to consider at a resentencing following a vacated plea agreement and no evidence in the record to demonstrate actual vindictiveness, we hold that the defendant's increased ten year

sentence for sexual assault and the original ten year sentence for burglary do not violate *Pearce* and *Denny*.

*By the Court.*—The decision of the court of appeals is reversed in part and affirmed in part.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The point of applying the *Pearce-Denny* due process doctrine in this case is to assure the public and the defendant that the defendant is subjected to punishment for the crime the state has proved, not for the "offense" of withdrawing a guilty plea. The withdrawal of the plea cannot at one and the same time be granted by the court and penalized by the court.

To ensure that the defendant is punished only for the crime committed rather than the defendant's choice to exercise his or her legal rights, the United States Supreme Court has looked skeptically at harsher sentences imposed after the defendant has exercised those rights. The United States Supreme Court is not concerned with looking for a particular subjective intent on the part of a particular judge when the punishment is increased at the second sentencing; the Court has recognized that such motive would be extremely difficult to prove. The Supreme Court has instead adopted a prophylactic rule in *North Carolina v. Pearce,* 395 U.S. 711, 725, note 20 (1969), to guard against the possibility that a particular judge might act on "vindictive" reasons in resentencing a defendant. The *Pearce* rule protects against the institutional hazard that a judge subconsciously might be motivated to respond in a retaliatory manner to a defendant's fruitless exercise of his right to obtain a retrial of a decided question. *North Carolina v. Pearce, supra,* 395 U.S. at 725; *Colten v. Kentucky,* 407 U.S. 104, 113, 114 (1972); *Chaffin v. Stynchcombe,* 412 U.S. 17, 18 (1973).

To guard against this hazard which is inherent in the resentencing process, the Court requires the trial court to

state, on the record, its reasons for imposing a harsher sentence. These reasons must meet several criteria: (1) they must be based on objective information; (2) they must concern identifiable conduct; (3) that conduct must be on the part of the defendant; (4) that conduct must occur after the time of the original sentencing proceeding. (Like the majority, I recognize that this fourth factor is ambiguous in light of other language in the *Pearce* opinion.)

The United States Supreme Court has set forth a difficult test which the trial court must pass on the record it creates. I write separately because I disagree with the majority's conclusion that the three reasons for increasing this defendant's sentence which the majority reads into the circuit court's statements at sentencing satisfy the *Pearce-Denny* criteria. I am persuaded that the factors "leniency" and "amplified knowledge of the defendant's criminal activity" as used in the majority opinion do not concern objective information, stated in the record, of defendant's identifiable conduct. These factors do not involve the defendant's acts, and these factors, as defined in the majority opinion, will be present in any case in which a defendant chooses to exercise his or her right to withdraw a guilty plea and go to trial.

The majority reads "leniency" into the record based on its understanding of the inherent nature of plea bargaining, but the record reveals that at the first sentencing the circuit court did not mention "leniency," and "leniency" does not appear to have been a concern at that hearing. The only possible "leniency" that the record reveals is the circuit court's reservations about the defendant's guilt because the circuit court believed the defendant may have had a defense. The two trials after the defendant's withdrawal of the plea revealed to the circuit court what the defendant had already told him by pleading guilty: that the defendant was, in fact, guilty. On resentencing it is clear that the circuit court believed

it had erroneously given the defendant the benefit of a doubt as to guilt in the original sentencing and at the resentencing the circuit court sought to take away that benefit.

Neither the "leniency" nor the "amplified knowledge of the defendant's criminal activity" involves any facts not previously known by the judge. The trials proved, as had the hearing on the guilty plea, that the defendant had committed the crime. The facts of the crime were set forth in the complaint and in the transcript of the preliminary hearing at which the victim had testified; the transcript was available to the circuit court at the first sentencing. The only "fact" that changed between the first and the second sentencing was the circuit court's *perception* of those facts. At the second sentencing, the circuit court attempted to rectify its previous mistake. However, as both parties agreed on oral argument, to allow the circuit court to increase a sentence on resentencing because it had had a mistaken perception of the offense or offender at the first sentencing violates due process under *Pearce* and *Denny* because a change of mind by the court is not objective "new" information of the defendant's identifiable conduct.

The court of appeals carefully compares in its opinion the facts the circuit court knew and considered on sentencing and resentencing and carefully explains that the resentencing was based on the circuit court's changed *perception* of the offender and offense. I am persuaded by the court of appeals' analysis that the record does not reveal that the circuit court affirmatively stated reasons for imposing a harsher second sentence on the sexual assault conviction based on its considering objective "new" information of the defendant's identifiable conduct. Instead of paraphrasing the opinion of the court of appeals, I set forth the relevant parts as follows:

"We conclude that the increased sentence for sexual assault deprived defendant due process because it was not

based on objective facts unknown to the trial court at the time of the first sentence. . . .

"As a factual basis for the plea bargain, the prosecutor told the court that about 3:00 a.m., September 11, 1978, the victim was asleep in her apartment when she was awakened by the defendant choking her. He was lying on her and was nude. Defendant told her that he wanted to have sex with her and pushed a fork against her neck. He threatened to hit her with his fist but put down the fork and grabbed a picture which he put against her neck. He told her he entered her second-floor apartment by climbing up to the balcony to a patio outside her apartment. He was in the apartment about forty-five minutes before the victim could put him out.

"The trial court adjudged defendant guilty of assault and committed him for a medical evaluation. At the sentencing the judge said he had examined the reports submitted by the doctors and the Department of Health and Social Services. The judge said defendant had a very substantial prior criminal record, that he had had opportunities for rehabilitation and that the case was 'extreme,' a word the judge said he could not over-emphasize because of the risk to the victim. Stating that defendant's behavior was about as anti-social as it could be, the court sentenced him to six years' incarceration, less credit for time in the county jail.

"The trial court subsequently permitted defendant to withdraw his plea. The court vacated the conviction and sentence, and reinstated the burglary charge. Both charges were tried to a jury. The first trial resulted in a guilty verdict on the burglary charge but the jury could not agree on the sexual assault charge. Defendant was convicted of second-degree sexual assault in a second trial.

"The victim testified at each trial that she awoke in her apartment with defendant choking her and with a fork to her neck. He was naked and on top of her and demanded sexual intercourse. He unsuccessfully attempted vaginal and anal penetration and fondled her and demanded that she fondle him. During the struggle, he dropped the fork and picked up a picture with a glass front, which he broke, and pressed the picture to her neck. When she insisted on going to the bathroom, he went with her, grabbing her hair and continuing to fon-

dle her. She grabbed his hair but released him when he released her. Defendant then dressed and left the apartment. The victim had locked her front door. Defendant said he came up through her patio door. An investigating officer testified that shortly after the incident the victim was in semi-shock and had neck wounds consisting of three punctures and four scratches but no bleeding.

". . . .

"The trial court sentenced defendant to concurrent terms of ten years on the burglary and sexual assault charges, less credit for time previously served. The judge said that when imposing the original six-year sentence, he took into account that a plea bargain had been entered, that defendant was an excellent subject for rehabilitation, and that defendant was remorseful. The judge said that when sentencing on a plea bargain, he has reservations as to the guilt of a defendant, but that during the trial he became aware of the victim's complete innocence and the strength of the state's case. He believed that defendant had feigned remorse. One basis for that belief was that defendant obtained a new trial on his claim of intoxication at the time of the offenses but offered no evidence of intoxication at trial. The other basis for the judge's belief was defendant's unwillingness to accept the overwhelming evidence of his guilt. The judge was convinced on the basis of the presentence report that defendant was not a good subject for rehabilitation.

". . . .

"When imposing the ten-year sentence for sexual assault, the judge had before him essentially the same objective information in the presentence report as he had when sentencing defendant to six years. The report contained additional objective facts which are irrelevant to our inquiry. Those facts consisted of procedural history, defendant's employment record before his no contest plea, and an innocuous prison record. The judge did not state that he relied on any of those facts when imposing the longer sentence. He did not include those facts among his reasons for the harsher sentence, as he must under *Pearce* and *Denny* if the sentence is to be sustained.

"The statements in the presentence report regarding defendant's being a threat to the community, his re-

habilitation potential and the recommendation that he be sentenced for an appropriate period are new and objective in the sense that they involve the reported subjective reactions of another person. Those reactions, however, do not differ markedly from those strongly expressed by the judge himself at the first sentencing, and are therefore irrelevant to the *Pearce* and *Denny* standards.

"As the judge noted, he could not fault defendant for his counsel's trial tactic of not pursuing the intoxication defense. Rather, the judge concluded that raising that defense impeached defendant's previous claim to remorse for what he had done. The judge's belief that defendant may have feigned remorse when first sentenced and was not remorseful at the second sentencing is not an objective fact.

"The facts related by the prosecutor to the court regarding the assault as a basis for the plea bargain were substantially the same as the facts to which the victim testified. The important difference lies not in the facts themselves but in the reaction of the judge to how they were presented. As the judge put it, hearing the witnesses and seeing the victim is different from hearing the prosecutor's 'cold report' and reading the presentence report.

"The state urges that the difference between live testimony and cold reports relating to the same facts justifies a longer sentence. The state asserts that we should adopt the view expressed in *United States v. Kienlen,* 415 F.2d 557 (10th Cir. 1969). *Kienlen* held that a harsher sentence following a new trial may meet the *Pearce* standard where the trial judge has heard the facts from a witness and a deposition rather than obtaining them from 'a cold pre-sentence report.' 415 F.2d at 559–60. But *United States v. Tucker,* 581 F.2d 602, 607 n. 10 (7th Cir. 1978), when vacating a harsher sentence, rejected *Kienlen* for having failed 'strictly to follow' the *Pearce* requirement for objective information or identifiable conduct by the defendant after the first sentence.

"We agree with *Tucker's* rejection of the distinction between live testimony and a cold report as justification for a harsher sentence. Judicial retaliation could be masked if the trial court's subjective reaction to the same evidence were allowed to justify a harsher sentence.

Because due process 'requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge,' *Pearce,* 395 U.S. at 725, the potential for vindictiveness must be prevented.

"The state suggests that because defendant withdrew his original plea of guilty and went to trial, leniency based on his plea of guilty was inappropriate at the resentencing, and that the trial court simply sentenced him without extending that leniency. The state quotes from *Corbitt v. New Jersey,* 439 U.S. 212, 223 (1978), to the effect that 'it is constitutionally permissible to take [a guilty plea] into account. . . . [I]t is not forbidden to extend a proper degree of leniency in return for guilty pleas.' The record does not show that the trial court granted leniency to defendant in return for his guilty plea.

"We conclude no showing was made of objective facts first brought to the attention of the trial judge when he imposed the second sentence for sexual assault. The longer sentence for sexual assault therefore does not meet the *Pearce* and *Denny* standards. The ten-year sentence must be reduced to the original sentence of six years. *Denny,* 47 Wis. 2d at 547, 178 N.W.2d at 42."

The circuit court's own words most clearly reveal its frustration with its previous sentencing and its attempt to rectify at resentencing what the court perceives as its own error:

"There were three principal considerations, at least on my part, when you were sentenced the first time. The first was it came before me on a plea agreement. . . .

"The second was that I was quite impressed that you were penitent and remorseful at that time and the third was that I was satisfied you were an excellent subject for rehabilitation. And I don't believe in the validity of any one of those three premises at this time . . .

". . . .

"I gave you the most lenient sentence that I thought I possibly could justify under the pre-sentence report and giving you also what I considered to be the benefit of the doubt as to your guilt because whenever a District Attorney comes before me and say 'we are entering into a plea agreement and we are not making a statement and we

are dismissing a charge', despite whatever else is said, I always have some mental reservations regarding the guilt, real guilt of the defendant. I wonder if there wasn't some latent defect in the State's proof or some other problem that presents a hazard to the State in obtaining a conviction to such an extent that they are willing to make a compromise in a serious case like this so that you get the benefit of that consideration from the Court at the time of the original sentence.

*"Now, I have heard the evidence for the first time, I have seen the victim. I have heard the witnesses.* It's a lot different than a cold report that I get from the District Attorney or from what's embodied in the presentence report.

"And I'm convinced, despite the fact there was a hung jury on the one count the first trial, which in view of the—well, I won't characterize it the way I feel about it, but I felt that the evidence of your guilt is overwhelming in this case, absolutely overwhelming. And consequently, I feel that that's an altogether different matter to be brought to the Court's attention at this time where I didn't hear the testimony and didn't hear the evidence in the first place.

"And it puts the case in an altogether different light from a sentencing standpoint, despite the fact that there was an admission on your plea the first time. The Court simply didn't have the detail into the complete innocence of the victim. *I certainly didn't have the knowledge of the strength of the State's case and I'll have to admit I gave you the benefit of mental reservations concerning the State's case, the potential for possible acquittal and also, of course, the interest of protecting the victim.*

*"So from a guilt phase standpoint in this case, where we have a plea agreement abandoned and then a trial as contrasted with the kind of information I would have had had we tried the case the first time, I get an altogether different blush or view of your guilt than I had at the time of the plea agreement."* (Emphasis added.)

For the reasons set forth herein and by the court of appeals, I would affirm the decision of the court of appeals.

I am authorized to state that Justice Nathan S. Heffernan joins in this dissent.