## STATE OF CONNECTICUT *v.* RONALD G. SUTTON
### (11753)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued June 5—decision released September 10, 1985

*Jon C. Blue,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. This appeal arises from the judgment of sentence imposed in connection with the

defendant's rape of a fourteen year old girl in Wallingford on May 21, 1979. On October 4, 1982, the defendant Ronald Sutton was found guilty by a jury on each count of a three count information. The first count charged the crime of sexual assault in the first degree in violation of General Statutes § 53a-70 (a);[1] the second count charged the crime of kidnapping in the second degree in violation of General Statutes § 53a-94 (a);[2] and the third count charged the crime of threatening in violation of General Statutes § 53a-62 (a) (1).[3] On October 5, 1982, the defendant was sentenced on the first count to a term of not less than seven and one-half years nor more than fifteen years, on the second count to a term of not less than seven and one-half years nor more than fifteen years with the sentence on the second count to run consecutive to that on the first count and to a sentence of one year on the third count to run consecutive to the sentence on the first and second counts. The judgment stated that an effective sentence of not less than sixteen years and not more than thirty-one years was imposed.

---

[1] General Statutes § 53a-70 (a) provides: "(a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] General Statutes § 53a-94 (a) provides: "(a) A person is guilty of kidnapping in the second degree with a firearm when he kidnaps in the second degree, as provided in section 53a-94, and in the commission of such offense he uses or is armed with and threatens the use of or uses or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be convicted of kidnapping in the second degree and kidnapping in the second degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[3] General Statutes § 53a-62 (a) (1) provides: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

On October 5, 1982, the defendant appealed to this court. He frames the issue on appeal in this fashion: "Did the imposition of a more severe sentence on the Defendant following his reconviction after he successfully challenged his first conviction fail to comport with the requirements of *North Carolina* v. *Pearce*, 395 U.S. 711 [89 S. Ct. 2072, 23 L. Ed. 2d 656] (1969), and deprive the Defendant of liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States?" The defendant is challenging not his underlying conviction of October 5, 1982, but rather the sentence imposed on account of that conviction. He argues that this sentence should be vacated and that the case should be remanded for a resentencing proceeding comporting with *North Carolina* v. *Pearce*, supra.

The factual background pertinent to our disposition is the following. On July 7, 1981, the defendant pleaded guilty under the *Alford*[4] doctrine to the same three charges of which he was later found guilty by a jury on October 4, 1982. At the time of the July 7, 1981 plea, the trial court, *Reynolds, J.,* after an extensive canvass, indicated that it intended to impose an effective sentence of not less than seven and not more than twelve years in prison, and, ordering a presentence investigation, it continued the matter for sentencing to August 14, 1981.[5] On the latter date, the trial court did sentence the defendant on the first count charging sexual assault in the first degree to a term of not less than

[4] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[5] While the state indicated that it wanted a somewhat higher sentence, the trial court, at the state's suggestion, put on the record that the age of the victim was an important consideration for the trial court's proposed sentence as it "did not want to put her through the trauma of coming into court and testifying in an open public trial" and for that reason was inclined to be "more liberal" than the state on the matter of the sentence to be imposed.

seven years nor more than twelve years, on the second count charging kidnapping in the second degree to a term of not less than seven years nor more than twelve years, and on the third count charging threatening to one year. It ordered that all the sentences were to run concurrently for an effective sentence of not less than seven years and not more than twelve years.[6]

Thereafter, on November 30, 1981, the defendant filed an application for a writ of habeas corpus.[7] *Sutton* v. *Warden,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 266428. The sole ground alleged in the application for the issuance of the writ was that "[the defendant's] imprisonment is illegal in that the minimum terms of his sentence [of August 14, 1981,] for sexual assault in the first degree and kidnapping in the second degree are more than one-half of the maximum terms imposed for those crimes, in violation of Conn. Gen. Stat. § 53a-35 (c) (2)."[8] The prayer

---

[6] Immediately after the imposition of this sentence and in the defendant's presence, the trial court said: "He has a right to apply to the Sentence Review Division for review of this sentence"; the clerk asked that the record reflect that the defendant "is served with notice of application for right to have sentence reviewed."

[7] Counsel for the defendant on this appeal was (1) not the counsel who negotiated the *Alford* plea bargain, and (2) not the counsel who in fact appeared for the defendant when the hearing was held on his application for the writ of habeas corpus.

[8] General Statutes (Rev. to 1979) § 53a-35 provides in pertinent part:

"(c) Except as provided in subsection (d) the minimum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, the minimum term shall not be less than ten nor more than twenty-five years; (2) for a class B, C or D felony the court may fix a minimum term of not less than one year nor more than one-half of the maximum term imposed, except that (A) where the maximum is less than three years the minimum term may be more than one-half the maximum term imposed or (B) when a person is found guilty under section 53a-59 (a) (1), section 53-59a, 53a-101 (a) (1) or 53a-134 (a) (2), the minimum term shall be not less than five years and such sentence shall not be suspended or reduced, or when a person is found guilty under section 53a-60c, the minimum term shall be not less than three years and such sentence shall not be suspended or reduced, or when a person is found guilty

for relief requested that the habeas court "issue an order declaring his sentences for sexual assault in the first degree and kidnapping in the second degree *null and void* . . . ." (Emphasis added.)

On March 15, 1982, a hearing was held on the defendant's application for a writ of habeas corpus at which the defendant, his defense counsel and assistant state's attorney Michael Dearington, were present. At the outset, the defendant argued that the sentence should have been not less than six years and not more than twelve years rather than the sentence imposed of not less than seven nor more than twelve years because the sentencing statutes provided that the minimum sentence imposed could not exceed one half the maximum. Admitted as an exhibit, the affidavit of the defendant's attorney at his August 14, 1981 sentencing recited in part that the defendant "plead [sic] guilty upon the understanding, *inter alia,* he would receive an effective sentence of seven to twelve years to serve." (Emphasis in original.) The state argued that it felt that the habeas court, *N. O'Neill, J.,* did not have "the authority to change sentences" and that the matter "should be either referred to Sentence Review or he should be allowed to withdraw his plea, and we start from round one again." The defendant himself responded that "[t]hat would be fine with me." The state said that it had no objection to going to the sentence review division but also said "I'm not sure what

under section 53a-60b, the minimum term shall be not less than two years and such sentence shall not be suspended or reduced . . . .

"(d) Notwithstanding the provisions of subsections (a) and (c), except as provided in subdivision (2) of said subsection (c), when a person is sentenced for a class C or D felony or for an unclassified felony, the maximum sentence for which does not exceed ten years, the court may impose a definite sentence of imprisonment and fix a term of one year or less; except when a person is found guilty under sections 53a-55a, 53a-56a, 53a-60a, 53a-70a, 53a-72b, 53a-92a, 53a-94a, 53a-102a and 53a-103a, the court shall not fix a term of less than one year."

the petitioner is asking for." A colloquy ensued,[9] with the court, the defendant and both counsel participating, during which the withdrawal of the defendant's guilty plea and a new trial became focal. The court,

[9] The transcript of this colloquy discloses the following:

"Mr. Dearington: I have no objection to it going to Sentence Review. I'm not sure what the petitioner was asking for.

"The Court: I think what he's saying, you're going to let him withdraw his plea and start over?

"Mr. Dearington: I would be delighted. I hope he understands, once he does that, the sentence in this case is of no relevance whatsoever in future proceedings.

"The Court: There may be a certain danger in that, Mr. Sutton.

"The Defendant: I understand that. Can I say something? Now, you have had me locked up four years, and I never opened my mouth before. I was arrested June the 5th, 1979. One time it was over two years I stayed in that Correctional Center, over two years; couldn't get to court, and Hugh Keefe, I have letters from him, threatening me for more time than the statute actually called for. I have FBI documents they kept from me all the time, showing they are not my prints connected with this case.

"The Court: Okay. Maybe you think you have got a decent chance — you may have a decent chance then on a trial?

"The Defendant: That's what I want.

"The Court: You want a trial?

"The Defendant: Right.

"The Court: The State's Attorney's Office is indicating they are perfectly willing to give you a trial, which means withdraw your plea of guilty and you'll start over.

"The Defendant: That would be fine with me. When I went to court, I don't hardly remember even being in court.

"The Court: And your State's Attorney's Office indicates that that is acceptable?

"Mr. Smith: I hope — I'm not sure — I hope this doesn't become a problem. This gentleman is aware of the fact that now the sentences [sic] are muted out and we start over again, that he is exposed to the maximum penalties involved in the crime?

"The Defendant: I am.

"The Court: Certainly exposed to some penalty that is in excess of seven to twelve. Do you understand that?

"The Defendant: I understand that.

"The Court: You can do worse than you have done.

"The Defendant: No, I can't either. I have committed no crime in this stinking state. I have got proof of it. They let me go crazy in this jailhouse and sent me here.

"The Court: If the State proves the case against you and you're found

defense counsel and the state then all expressly warned the defendant that if he chose to withdraw his guilty plea and have a new trial, the risk of incurring an increased sentence existed if a guilty verdict were returned. Although the defendant stated that he understood "that," the court said it would delay its decision until it was informed that the defendant's attorney had conferred with him and had, in writing, notified the court that the defendant wished to withdraw his guilty plea. Upon receiving a "positive statement" to that effect, the court said that then "I'll grant the motion to withdraw the guilty pleas and erase all the prior elections."

On March 22, 1982, the defendant's counsel wrote to the habeas court stating that he had spoken to the defendant, and "warned him that he would open himself to the maximum sentences for the crimes charged, and that there is a possibility of receiving a term of imprisonment substantially longer than the original

---

guilty, the judge can sentence you to a term that is more harsh, longer, worse than the one you're presently under.

"The Defendant: Yes, sir. I understand that.

"The Court: And you're willing to give up this possibly lower sentence for the opportunity to have a full trial, which you think you may be vindicated absolutely and found not guilty? Counselor, do you want an opportunity to confer with your client before he takes this rather large step?

"Mr. Smith: I would, your Honor.

"The Court: All right. I'll do this. I'll hold this decision until I hear from your attorney that he's conferred with you, and I want to hear it in writing that this is what you want, that you do want to withdraw your plea, and upon receiving a positive statement about that, that you do want to withdraw your plea and in writing from your counsel, I'll grant the motion to withdraw the guilty pleas, and erase all the prior elections.

"The Defendant: Thank you, your Honor.

"The Court: And you can start over and have a jury trial and the whole thing, but I want you to confer with counsel first, because it's a large step, not a small matter that you're doing here, and it might be better off to leave it where it is, but that, of course, is up to you and your attorney. All right."

sentence," but that the defendant "indicated to me his desire to go ahead with a new trial."[10] The defendant's counsel also enclosed with that letter the defendant's affidavit "to that effect," which, inter alia, acknowledged his attorney's warning. The defendant thus swore: "I fully understand the risk involved, but have nevertheless decided to withdraw my guilty plea and

---

[10] The letter of March 22, 1982, to the court was in full as follows:

"LEGAL ASSISTANCE TO PRISONERS
340 Capitol Avenue, Room 101
Hartford, Connecticut 06106
Telephone (203) 566-2030

March 22, 1982

The Honorable Norris O'Neill
Court House
103 Raymond Road
West Hartford, Connecticut 06107

Dear Judge O'Neill:

I am writing in regard to *Sutton* v. *Warden,* Docket No. 266429 [sic] which you heard on the habeas calendar at Somers on March 15, 1982. At that time you indicated that you would reserve your judgment until I had a chance to confer with Mr. Sutton.

To refresh your memory, Mr. Sutton had been given a sentence of 7 to 12 years, in violation of Conn. Gen. Stat. § 53a-35 (c) (2). On March 15, Assistant State's Attorney Michael Dearington indicated that the state would allow Mr. Sutton to withdraw his guilty plea and proceed with a new trial.

I spoke with Mr. Sutton on March 19, 1982. I warned him that he would open himself to the maximum sentences for the crimes charged, and that there is a possibility of receiving a term of imprisonment substantially longer than the original sentence. Mr. Sutton indicated to me his desire to go ahead with a new trial. Please find enclosed his Affidavit to that effect.

If I can be of any further assistance to the Court, please do not hesitate to contact me.

Very truly yours,

/s/Brian W. Smith
Brian W. Smith
Attorney at Law
BWS:ee
Encl."

proceed with a new trial."[11] Shortly thereafter, on April 28, 1982, the habeas court issued its memorandum of decision,[12] finding that the defendant's "sen-

[11] The affidavit enclosed with Attorney Smith's letter of March 22, 1982, was the following:

"AFFIDAVIT

I, Ronald G. Sutton, having been first duly sworn, do hereby make affidavit and say as follows:

1. I am the Plaintiff in a habeas corpus action, *Sutton* v. *Warden,* Docket No. 266429 [sic], challenging the legality of my sentence.

2. In court on March 15, 1982, the Assistant State's Attorney offered to accept a withdrawal of my guilty plea and proceed with a new trial.

3. My attorney for the habeas corpus action, Brian W. Smith of Legal Assistance to Prisoners, has explained to me that if I proceed with a new trial there is a distinct possibility that I may receive a term of imprisonment substantially longer than the sentence originally imposed.

4. I fully understand the risk involved, but have nevertheless decided to withdraw my guilty plea and proceed with a new trial.

/s/Ronald G. Sutton
Ronald G. Sutton

STATE OF CONNECTICUT
ss Somers
COUNTY OF TOLLAND

Personally appeared before me Ronald G. Sutton, signer of the foregoing affidavit, and, being first duly sworn, declared such Affidavit to be his free act and deed, this 19th day of March, 1982.

/s/Brian W. Smith
Brian W. Smith '
Commissioner of the
Superior Court"

[12] The memorandum of decision of the habeas court, *N. O'Neill, J.,* was the following:

| "NO. 266428 | : SUPERIOR COURT |
| RONALD G. SUTTON | : JUDICIAL DISTRICT |
| VS. | OF HARTFORD/NEW |
| | : BRITAIN AT HARTFORD |
| WARDEN, STATE PRISON | : APRIL 28, 1982 |

MEMORANDUM OF DECISION
RE: HABEAS CORPUS

With the knowing consent of both parties the court finds that petitioner's sentences of August 14, 1981 are void and that his continued imprisonment is illegal.

It is ordered that petitioner be released and that a new trial be had promptly if the state wishes to prosecute.

s/s N. O'Neill, _____ , J.
N. O'Neill"

tences of August 14, 1981 are *void* . . . ." (Emphasis added.) There was no appeal from that judgment.

The defendant thereafter pleaded not guilty and elected a trial by jury. The six day jury trial took place in September and October, 1982, on the same three charges to which he had earlier pleaded guilty under the *Alford* doctrine. At trial a number of witnesses testified, including the victim, her mother, her father, her sister and the defendant.[13] The jury returned and the court, *Mulvey, J.*, on October 4, 1982, accepted their verdict of guilty on each of the three counts on October 4, 1982. The court imposed an effective sentence of not less than sixteen years and not more than thirty-one years.[14]

---

[13] At the trial the defendant presented evidence, inter alia, on his defense of alibi.

[14] At sentencing, the state had asked, inter alia, the court "that on each of the three counts, that a maximum sentence be imposed, to run consecutively . . . [that] [h]e wanted his day in court. He had his day in court, and now it's time for his past record to catch up with him . . . it's the State's request, if the Court please, that sentences be imposed not concurrently but consecutively, and that the maximum be imposed."

Counsel for the defendant said, inter alia, that he did not feel it was "appropriate for the court to impose maximum penalties, and certainly not consecutive ones on this count [sic] . . ." arguing that the kidnapping charge was "incidental to the assault. . . ." Directing the court's attention to the "prior plea arrangement . . . for a term of seven to twelve years . . ." that the defendant having "opted to vacate that sentence, even though he was scheduled for a parole hearing fairly soon; and I don't think that having exercised those rights, that that would warrant the imposition of a maximum sentence. So, I would ask the Court to consider sentencing in the area of eight to sixteen years, with the sentences running concurrently . . . ."

The defendant also addressed the court and after commenting on the jury trial said: "Also, since I was sentenced illegally at the first trial, and the Prosecutor or my attorney made no attempt to correct it, and the Judge surely knew it was an illegal sentence, I believe if I am sentenced to a longer term, it is only to punish me for asking for what is guaranteed me by both the State and Federal Constitution, and by this State Statutes. Not once was I offered the chance to have my illegal sentence corrected without risk-

On appeal, the defendant argues that the imposition of a more severe sentence on October 5, 1982, following his reconviction after his successful attack on his first conviction does not comport with the requirements of *North Carolina* v. *Pearce,* supra, and has deprived him of his liberty without due process of law. In support of this contention the defendant argues that this case "is, for all practical purposes, indistinguishable from *Simpson* v. *Rice,"* the companion case of *Pearce,* decided sub nom. *North Carolina* v. *Pearce,* and that the facts of *Simpson* "are particularly important in the context of the instant case." In arguing that *Pearce*

---

ing a longer sentence. I still maintain I am innocent, but I am at the mercy of the Court. Thank you."

The state then said: "Your Honor, there was a waiver signed by him, which is of record, and it's in the file, in which he was advised, by his counsel who represented him on a Writ of Habeas Corpus, that we were not going to oppose the vacation of the sentence—the vacating of the sentence if it were understood, clearly and concisely, that we were to go to trial with a fresh slate, and there is a record in there, a letter from the Legal Assistant to Prisoners, in which it states 'I spoke with Mr. Sutton—' I am quoting from the two opening paragraphs; counsel has a copy of this; 'I spoke with Mr. Sutton on March 19th, 1982. I warned that he would open himself up to maximum sentences for the crimes charged, and that there is a possibility of receiving a term of imprisonment substantially longer than the original sentence. Mr. Sutton indicated a desire, to me, to go forward with a new trial. Please enclose his affidavit to that effect.' So, again, we have this man standing up here with the unmitigated gall of saying that that sentence has a motion, or something—in any event, the affidavit that he signed, if your Honor please, and a Commissioner of the Superior Court took his oath—'My attorney for the Writ of Habeas Corpus, Brian W. Smith, Legal Assistant for the Prisoners, has explained to me if I proceed with a new trial, there is a distinct possibility that I may receive a new term of imprisonment substantially longer than the sentence originally imposed; but I fully understand the risk, but decided to go forward with the plea.' I also stated, on March 15th, 'The Assistant State's Attorney, acting under my authority,' if your Honor please, 'offered to accept a withdrawal of his guilty plea, and proceed with a new trial.' I have always felt that that plea was inadequate. The fact was that the plea—the other sentence was inadequate. The only reason it was even allowed to go through was to save that family from the very torture that they had here. Now, he has had his day in court. He has made that family testify. There is nothing that recommends a lighter sentence."

controls, the defendant maintains that the *Pearce* rule applies to defendants who have successfully attacked convictions based on guilty pleas as well as to defendants who have successfully attacked illegal sentences. He also maintains that he has not waived his due process rights. On the other hand, the state's contention, broadly stated, is that: "Once A Defendant Knowingly and Voluntarily Withdraws[15] His Plea Of Guilty And Thus Subjects Himself, His Victims, And Witnesses To Exhaustive Examination During The Subsequent Criminal Trial . . . That Defendant [cannot] Then Resurrect The Voided Plea In His Effort To Avoid The Consequences Of The Lawful Sentence Which The Trial Court Based Upon Evidence Adduced At The Criminal Trial." We find error and remand.

Some discussion of *Pearce* and *Rice,* which were habeas corpus proceedings brought by state prisoners, is required for our analysis. The United States Supreme Court articulated the question presented by both of these cases as follows: "When at the behest of the defendant a criminal conviction has been set aside and a new trial ordered, to what extent does the Constitution limit the imposition of a harsher sentence after conviction upon retrial?" *North Carolina* v. *Pearce, supra,* 713.

In *Pearce,* the prisoner had been convicted in a North Carolina court of assault with intent to commit rape and sentenced to prison for a term of twelve to fifteen

---

[15] The defendant, in his reply brief, argues it is erroneous for the state to say that the defendant withdrew his plea. "Rather, [he argues] he pleaded guilty, received a sentence of unquestioned illegality, and subsequently filed a habeas corpus action claiming that he was illegally confined. . . . The writ was granted . . . because his sentence, and consequently the plea that had been negotiated on the basis of that sentence, [was] illegal. It is this successful pursuit of a collateral remedy that brings this case squarely within the ambit of *North Carolina* v. *Pearce,* 395 U.S. 711 [89 S. Ct. 2072, 23 L. Ed. 2d 656] (1969). *See id.* at 724."

years. Several years later, he instituted a state post-conviction proceeding which culminated in the reversal of his conviction by the North Carolina Supreme Court on the ground that an involuntary confession had been admitted unconstitutionally as evidence against him. He was thereafter retried, convicted and sentenced by the trial judge to an eight year prison term, which, "when added to the time Pearce had already spent in prison, the parties agreed amounted to a longer total sentence than that originally imposed." Id. That conviction and sentence were affirmed on appeal to the North Carolina Supreme Court. He then began habeas corpus proceedings in a federal district court, which held that "the longer sentence imposed upon retrial was 'unconstitutional and void.' " Id., 714.

In the companion case, Rice had pleaded guilty in an Alabama court to four separate charges of second degree burglary and was sentenced to prison terms aggregating ten years. Two and one-half years later, the judgments were set aside in a state coram nobis proceeding on the ground that Rice had not been accorded his constitutional right to counsel. Thereafter, he was retried on three of the charges, convicted and sentenced to prison terms aggregating twenty-five years. On his resentencing he was not given any credit for the time that he had spent in prison on the original judgments. Rice then initiated habeas corpus proceedings in a federal district court "alleging that the state trial court had acted unconstitutionally in failing to give him credit for the time he had already served in prison, and in imposing grossly harsher sentences upon retrial." Id., 714–15. The federal court agreed with both of Rice's claims.

The United States Supreme Court was thus faced with "two related but analytically separate issues" in *Pearce* and *Rice.* Id., 715. The broader one, presented by *Pearce,* concerned "the constitutional [limitation]

upon the imposition of a more severe punishment after conviction for the same offense upon retrial"; id., 715–16; the more limited issue presented by *Rice* was "whether, in computing the new sentence, the Constitution requires that credit must be given for that part of the original sentence already served."[16] Id., 716. On the issue in *Rice,* the court held that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." Id., 718–19. The court then addressed "the broader problem of what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received." Id., 719. On that issue, the court held, "that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams* v. *New York,* 337 U.S. 241, 245 [69 S. Ct. 1079, 93 L. Ed. 1337 (1949)]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." Id., 723. However, after approving of "[t]he freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence," the *Pearce* court hastened to point out that "[t]o say that there exists no abso-

---

[16] Pearce had been given credit for time previously served. *North Carolina* v. *Pearce,* 395 U.S. 711, 716 n.6, 719 n.14, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

lute constitutional bar to the imposition of a more severe sentence upon retrial is not, however, to end the inquiry. There remains for consideration the impact of the Due Process Clause of the Fourteenth Amendment." Id.

The *Pearce* court declared that it would be "a flagrant violation" of the fourteenth amendment for a state trial judge to follow an "announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." Id., 723–24. The "very threat inherent in the existence of such a punitive policy would," *Pearce* said, "with respect to those still in prison, serve to 'chill the exercise of basic constitutional rights.'" Id., 724. A defendant's due process rights would therefore be violated where such punishment is imposed whether the earlier conviction has been set aside because of constitutional error or where a defendant has "successfully pursued a statutory right of appeal or collateral remedy." Id.

The *Pearce* court then announced its rule on the due process claims: "Due process of law, then, *requires* that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (Emphasis added.) Id., 725. Both Pearce and Rice had claimed that the trial courts had imposed the heavier sentences to punish them for their challenges of their original convictions. The majority in *Pearce,* however, said that it was not necessary to decide whether the trial judges had in fact acted vindictively. Because "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process *also requires*

that a defendant be freed of the apprehension of such a retaliatory motivation on the part of the sentencing judge." (Emphasis added.) Id.

Therefore, the *Pearce* court determined that "to assure the absence of such a motivation" it "was necessary to impose upon the resentencing judge what was later described as 'a prophylactic limitation.'" 3 LaFave & Israel, Criminal Procedure (1984) § 26.1 (c), p. 176; see *Michigan* v. *Payne,* 412 U.S. 47, 51, 93 S. Ct. 1966, 36 L. Ed. 2d 736 (1973).[17] "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *North Carolina* v. *Pearce,* supra, 726. This limitation recognizes that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States* v. *Goodwin,* 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982), quoting *Bordenkircher* v. *Hayes,* 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978); see *Chaffin* v.

---

[17] In *Payne,* the United States Supreme Court said that "[t]he *Pearce* restrictions serve to ensure that resentencing decisions will not be based on improper considerations, such as a judge's unarticulated resentment at having been reversed on appeal, or his subjective institutional interest in discouraging meritless appeals." *Michigan* v. *Payne,* 412 U.S. 47, 52–53, 93 S. Ct. 1966, 36 L. Ed. 2d 736 (1973). The judge who presided at the defendant Sutton's jury trial was, however, not the same judge who had accepted the defendant's *Alford* plea. See *Colten* v. *Kentucky,* 407 U.S. 104, 116–17, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972).

*Stynchcombe,* 412 U.S. 17, 32–33 n.20, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973). The federal due process clause, however, "is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' " *Blackledge* v. *Perry,* 417 U.S. 21, 27, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); *United States* v. *Goodwin,* supra, 375. An appellant who has been successful on appeal in obtaining a reversal of his conviction cannot complain that he be subjected to a proper reappraisal of sentencing standards on remand. *People* v. *Serrato,* 9 Cal. 3d 753, 764, 512 P.2d 289, 109 Cal. Rptr. 65 (1973); *People* v. *Hickey,* 109 Cal. App. 3d 426, 436, 167 Cal. Rptr. 256 (1980).

The defendant argues that the *Pearce* rule applies to defendants who have successfully attacked convictions based on guilty pleas as well as to those based on illegal sentences. We have no quarrel with that contention as a general proposition but are mindful that post-*Pearce* pronouncements by the United States Supreme Court, as we have pointed out, state that due process is not an absolute bar to a higher sentence. We conclude that the teachings of *Pearce* and its progeny, which were clearly implicated in the sentencing of October 5, 1982, merited attention. In this context, we cannot accept the state's assertion in its brief that, because the August 14, 1981 sentence "Was Void At The Defendant's Request, The Trial Court Had *Unrestricted* Ability To Sentence The Defendant To Any Lawful Sentence." (Emphasis added.)

Our disposition of this case must also consider another facet of the resentencing proceeding that we hereinafter direct. That involves the fact that the sentence imposed on October 5, 1982, after the defendant's jury trial, was itself illegal, in the sense that, as the defendant in his brief indicates, it did not comport with statutory authority. The sentences on the first and sec-

ond counts of the information were indeterminate sentences while the sentence imposed on the third count was a definite sentence. The minimum term of sixteen years is more than one half the maximum term of thirty-one years in violation of General Statutes § 53a-35 (c) (2).[18] This is so because the one year sentence for threatening was added to both the maximum and minimum terms and not just to the minimum.[19]

The defendant further argues that he "has already served his new minimum term of imprisonment, and, under these circumstances, only the *19* year increase in his maximum term presents a case and controversy for this Court to decide."[20] (Emphasis added.) The sentence imposed on October 5, 1982, was itself illegal because it was not imposed in accordance with statutory authority. The defendant himself has brought this to our attention in his brief. Despite his assertion that we are limited to reviewing "only the 19 year increase in his maximum term," we do not agree that the matter of the minimum term is academic, and on remand the illegality of the sentence for its statutory nonconformity should be addressed. See General Statutes

---

[18] See footnote 8, supra.

[19] See *State* v. *Gordon*, 197 Conn. 413, 504 A.2d 1020 (1985).

[20] This "19 year increase" assertion fairly extrapolates to the defendant's argument that his resentencing should have carried only a 12 year maximum as did the original sentence. It is arguably difficult to understand how the defendant can contend that if successful on this appeal, he should be entitled, on resentencing, to receive a sentence of not less than six years and not more than twelve years when such a sentence was neither "bargained for" nor imposed, and when his habeas corpus proceeding not only voided a sentence of not less than seven years and not more than twelve years which was statutorily illegal but also voided "his continued imprisonment."

On the resentencing we order below, we emphasize that both the teachings of *Pearce* and our sentencing statutes must be strictly observed. It goes without saying that the resentencing we order today must, of course, give the defendant credit for all time served since his original sentencing of August 14, 1981. *North Carolina* v. *Pearce*, 395 U.S. 711, 716 n.6, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

§§ 53a-35 (c) (2), 53a-37. An appellant, who has been successful on appeal or has an illegal sentence vacated, should not be heard to assert that "he should not be subjected to a proper reappraisal of statutory sentencing standards upon remand." *People* v. *Hickey*, supra, 436.

A remand for resentencing is also necessary because of *Pearce*. At that resentencing hearing, the teaching of *Pearce* requires that the defendant's due process rights must be strictly observed. "The goal of the *Pearce* rule, that apprehension of vindictiveness be allayed, does not permit a defendant to be left to speculate as to the true reason for an increased sentence." *Jacobs* v. *Redman*, 616 F.2d 1251, 1259 (3d Cir.), cert. denied, 446 U.S. 944, 100 S. Ct. 2170, 64 L. Ed. 2d 799 (1980). This is a matter of federal constitutional law.

The record of the remarks[21] of the trial judge in sentencing this defendant after the jury verdict of guilty does not affirmatively disclose any "factual data," that

---

[21] At the sentencing, on October 5, 1982, the trial court, after a colloquy with counsel concerning the application of a United States Supreme Court case cited in support of defense counsel's argument that the sentences to be imposed on the first and second counts should be concurrent and not consecutive, said:

"I, of course, sat through this trial, and listened to what took place here, and it was atrocious. The thing that happened to this little girl is a horrible thing, and she had to come in here and testify, as did her entire family: mother, father, and sister, and they did; and I suppose it will be a long time before this little girl is able to put it out of her mind as to what happened to her on that day.

"I understand that the accused could do as he did, in asking that the prior matter be vacated, and that he be allowed to proceed to trial, and that, of course, was accorded him, and he has had his trial; and I have no question in my mind as to the verdict being a proper one that the jury handed down late yesterday afternoon. I am aware of the accused's record. It's a record that involves violence; it involves knives; it involves sex. It hasn't improved with age, as sometimes occurs.

"And so, under those circumstances, I will impose a sentence that I think is a proper one, taking all those things into consideration. . . ."

are legitimate *Pearce* reasons for the increased sentence. Such reasons must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding [on August 14, 1981]." *North Carolina* v. *Pearce,* supra, 726; *Blackledge* v. *Perry,* supra; *Robinson* v. *Scully,* 690 F.2d 21, 24 (2d Cir. 1982). "If any doubt remained that the sentencing judge must himself articulate the basis for the harsher sentence, such doubt was dispelled by the Court's interpretation of *Pearce* in *Blackledge* v. *Perry,* 417 U.S. 21, 25–26, 94 S. Ct. 2098, 2101, 40 L. Ed. 2d 628 (1974)." *United States* v. *Tucker,* 581 F.2d 602, 606 (7th Cir. 1978). The affirmative disclosure required by *Pearce* and its progeny to ensure the "constitutional legitimacy" of the increased sentence is not present in the record. Despite a careful examination of the trial court's remarks at the resentencing of October 5, 1982, we cannot find that the record demonstrates that the increased sentences were based on objective information concerning identifiable conduct occurring subsequent to the original sentencing in accordance with *Pearce.* The record does not affirmatively disclose that this was done. The resentencing judge noted that he had "sat through this trial, and listened to what took place here, and it was atrocious." This, together with his observation that the victim, her mother, her father and her sister "had to come in here and testify," does not comport with *Pearce* and its progeny, which require that the factual basis for the higher sentence, if not the literal reasons, "affirmatively appear" in the record.

It is fair to say that a full trial after an earlier proceeding setting aside the original sentence can be a subsequent event under *Pearce* that may, in a given case, supply data that may lend support to an increased sentence. See, e.g., *United States* v. *Hayes,* 676 F.2d 1359,

1365 (11th Cir.), cert. denied, 459 U.S. 1040, 103 S. Ct. 455, 74 L. Ed. 2d 608 (1982); *United States* v. *Cunningham,* 529 F.2d 884 (6th Cir. 1976); *State* v. *Taylor,* 22 Wash. App. 308, 589 P.2d 1250, cert. denied, 92 Wash. 2d 1013 (1979); *State* v. *Stubbendick,* 110 Wis. 2d 693, 329 N.W.2d 399 (1983). Evidence introduced for the first time at a later trial has been suggested to constitute a basis for data regarding a defendant's conduct occurring after the first sentencing and consonant with *Pearce* where the record so discloses that under *Pearce* standards. See *United States* v. *Hayes,* supra; *United States* v. *Cunningham,* supra, 889. Of course, "amplified knowledge" about the defendant's criminal activity which may have occurred before the sentencing of August 14, 1981, but known to the earlier sentencing judge cannot serve as a basis for an increased sentence under *Pearce.* See *United States* v. *Gilliss,* 645 F.2d 1269, 1284 (8th Cir. 1981); *Barnes* v. *United States,* 419 F.2d 753 (D.C. Cir. 1969); *State* v. *Stubbendick,* supra; cf. *United States* v. *Grayson,* 438 U.S. 41, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978) (perjury by defendant will support an increased sentence); *United States* v. *Cunningham,* supra. In *United States* v. *Grayson,* supra, 51, the United States Supreme Court said: "A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing."

In light of the foregoing, we decide today to remand this case for resentencing in accordance with this opinion. On remand the sentencing judge will consider both the constitutional due process protection developed in *North Carolina* v. *Pearce* and its progeny and the statutory requirements for sentencing.

There is error, the sentence of October 5, 1982, is set aside and the matter is remanded to the trial court for resentencing not inconsistent with this opinion.

In this opinion DANNEHY, SANTANIELLO and CALLAHAN, Js., concurred.

PETERS, C. J., concurring. I agree with that part of the majority opinion which orders the trial court to hold a new hearing for the resentencing of the defendant. I write separately to emphasize that *North Carolina* v. *Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), imposes important constitutional constraints upon the scope of such a hearing.

Unless and until the United States Supreme Court decides to retreat from its holding in *Pearce,* we are bound to follow its mandate. To guard against the risk of retaliatory vindictiveness to punish a defendant's exercise of his right to a retrial, and to avoid the problems of proof that inhere in a factual demonstration of improper motivation, *Pearce* adopts a prophylactic rule. That rule purposely limits the circumstances under which a defendant, on a new trial, can receive a sentence more severe than that which was imposed upon him during an earlier prosecution for the same crime. The majority opinion recognizes that *Pearce* requires the sentencing judge to place on the record his reasons for imposing the more severe sentence. The majority opinion acknowledges that *Pearce* confines constitutionally permissible reasons for a more severe sentence to "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *North Carolina* v. *Pearce,* supra, 726.

I am troubled, however, by the intimations in the majority opinion that *Pearce* might allow the sentencing judge in making an affirmative record to rely, in any way, on the fact that the defendant had committed

an atrocious crime or that his retrial had compelled the victim and members of her family to testify. None of that constitutes "conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Nor do I believe that "a full trial after an earlier proceeding setting aside the original sentence can itself be a subsequent event under *Pearce*" unless, during the retrial, the defendant has demonstrably committed perjury. *United States* v. *Grayson,* 438 U.S. 41, 51, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978), on which the majority relies, does not signal a retreat from *Pearce,* because *Grayson* did not involve a reprosecution but concerned only the propriety of an enhanced sentence in a single trial. Indeed, *Grayson* does not cite *Pearce.* I urge the trial judge, on resentencing, to bear in mind that *Pearce* limits his inquiry to a search for objective facts about identifiable conduct of the defendant subsequent to his original sentencing. See *United States* v. *Gilliss,* 645 F.2d 1269, 1283–84 (8th Cir. 1981); *United States* v. *Tucker,* 581 F.2d 602, 604–607 (7th Cir. 1978); *United States* v. *Floyd,* 519 F.2d 1031, 1033–35 (5th Cir. 1975).

Accordingly, I concur.