STATE OF CONNECTICUT *v.* SCOTT WINER
(AC 20476)

Lavery, C. J., and Landau and Dranginis, Js.

Argued November 29, 2001—officially released May 14, 2002

*Louis S. Avitabile*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Scott Winer, appeals from the judgments of conviction rendered after his pleas of nolo contendere to two counts of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21[1] and one count of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2).[2] On appeal, the defendant claims that the trial court improperly denied his postsentence motions to vacate the judgments and to withdraw his pleas of nolo contendere because they were involuntary, unknowing and

[1] General Statutes (Rev. to 1995) § 53-21 provides in relevant part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its . . . health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

unconstitutional. The defendant asserts that his pleas were invalid because (1) the state failed to act within the terms of the plea agreement, (2) he did not demonstrate an understanding of the law, (3) he did not have an understanding of the relevant sentencing information because the substance of the plea agreement was not fully communicated to him, (4) the sentence that was imposed was illegal and (5) the trial court was not the most appropriate venue to seek a remedy for his claims. In essence, the defendant's appeal is based on two issues: (1) the sentence that he received from the trial court was not in accordance with the plea agreement he entered into with the state; and (2) the sentence he received was illegal. We disagree with the defendant's first claim and agree with his second claim and, therefore, we reverse the judgments of the trial court in part.

The following facts and procedural history are relevant to this appeal. The defendant was arrested for a series of acts of sexual misconduct that occurred between July, 1995, and March, 1997, involving three different males under the age of sixteen. On January 5, 1998, the defendant, who was represented by counsel, entered three nolo contendere pleas to the charges of risk of injury to a child. In exchange for entering the pleas, the trial court agreed that the maximum sentence of incarceration that it would impose on the defendant would be two years. The defendant was informed during the canvass that if the sentence exceeded two years, he could withdraw the pleas. The defendant, however, was specifically informed that the sentence could include a suspended term of thirty years. Sentencing was postponed until the court received the presentence report and an alternative incarceration plan. On March 26, 1998, the defendant was sentenced to eight years of incarceration, execution suspended after two years,

and was placed on probation with special conditions for a period of five years.[3]

On September 27, 1999, the defendant filed a motion seeking to vacate the judgments and to withdraw his pleas of nolo contendere. During a hearing on the motion, the defendant claimed that he should be permitted to withdraw his pleas and to plead anew because they were not made knowingly and intelligently. The trial court denied the motion, and the defendant appealed.

The defendant was released from custody on March 24, 2000, and his five year probation commenced. On March 27, 2000, the defendant reported to the office of adult probation and informed his probation officer that he would be residing in Massachusetts. The defendant was told that this would be a violation of his probation and that he could not leave the state until he received formal permission. The commonwealth of Massachusetts subsequently denied the defendant's request for an interstate compact transfer. On March 28, 2000, the defendant failed to report to a scheduled meeting with his probation officer and, on March 29, 2000, he failed to contact the office of adult probation, as was required. A warrant was issued for the defendant's arrest for violating the terms of his probation,[4] and he was arrested on April 3, 2000. The defendant is currently incarcerated as a result of violating his probation. Additional facts will be provided as necessary.

---

[3] In addition to the usual conditions of probation, the defendant was (1) prevented from having any unsupervised contact with children under the age of sixteen, (2) prevented from having any contact with any of the victims, (3) prevented from being in locations where children typically congregate and (4) required to participate in any counseling or treatment deemed necessary by the office of adult probation.

[4] The court found that the defendant violated the terms of his probation by (1) failing to report to his probation officer when required, (2) failing to keep his probation officer informed of his whereabouts, (3) failing to provide his probation officer with his address, (4) leaving the state of Connecticut and (5) failing to submit to sex offender evaluation.

I

The defendant claims that he should have been permitted to withdraw the nolo contendere pleas that he entered because they were involuntary, unknowing and unconstitutional because the sentence he received exceeded the terms of the plea agreement. It is the defendant's contention that the trial court violated the terms of the plea agreement when it sentenced the defendant to a period of probation in addition to the two years of incarceration. We disagree.

The following additional facts are needed for a resolution of this claim. On January 5, 1998, the defendant entered into plea bargain negotiations, through his counsel of record, whereby he agreed to enter pleas of nolo contendere. Before accepting the pleas, the trial court canvassed the defendant in accordance with Practice Book §§ 39-19 and 39-20.[5] Additionally, the defendant informed the court that he was thirty-five years old and had completed sixteen years of schooling.

Before accepting the pleas, the following colloquy took place between the defendant and the court:

---

[5] Practice Book § 39-19 requires a trial court personally to address the defendant in open court to determine that the defendant understands: "(1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge . . . and (5) The fact that he or she has the right to plead not guilty . . . and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of . . . nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead . . . nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

"The Court: And, I've discussed this matter with counsel again this morning, and at this particular point, I am limiting myself to an incarcerated portion of a sentence of up to two years. You understand that? Understand that?

"The Defendant: Yes.

"The Court: And, if after I receive the presentence report and an alternative incarceration plan, I come to the conclusion that you should go to jail for more than two years, then you will be allowed to withdraw your pleas, and go try the case, you understand that?

"The Defendant: Yes.

"The Court: But if after receiving those papers I come to the conclusion that that sentence or some sentence of less severity is in order, you won't be allowed to withdraw your pleas, you understand that?

"The Defendant: Yes.

"The Court: Now, a sentence could very well be something like thirty years suspended after two years or less, you understand that?

"The Defendant: Yes.

"The Court: Okay. Now, have you understood all the questions that I've asked you?

"The Defendant: Yes."

After concluding that the nolo contendere pleas were made voluntarily and intelligently, the court accepted the pleas and postponed sentencing until the office of adult probation completed the presentence investigation report and the alternative incarceration plan. Prior to being sentenced on March 26, 1998, the defendant's counsel stated that the defendant was prepared to submit to a period of probation if the court imposed the recommendation of the alternative incarceration plan.

The court sentenced the defendant to eight years of incarceration, execution suspended after two years, and five years probation.[6] After the sentencing hearing, the defendant signed a "conditions of probation" form.

On May 27, 1999, over fourteen months after being sentenced and signing the "conditions of probation" form, the defendant filed his first motion to vacate the judgments and requested permission to withdraw his pleas and to plead anew. A second motion was filed on September 27, 1999, also seeking to vacate the judgments and requesting permission to withdraw his pleas and to plead anew. The basis for both motions was the defendant's claim that the sentence that he received was not in accordance with the terms of the plea agreement. The court heard the motions on October 13, 1999, and denied them on December 15, 1999.

"A . . . plea, once accepted, may be withdrawn only with the permission of the court. . . . The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § [39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Internal quotation marks omitted.) *State* v. *Gundel*, 56 Conn. App. 805, 812, 746 A.2d 204, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000). "The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 505–506, 752 A.2d 49 (2000).

---

[6] General Statutes § 53a-29 (a) permits a trial court to sentence an individual "to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice."

"It is axiomatic that the trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement. [U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . When a defendant pleads [nolo contendere], he waives important fundamental constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences." (Citations omitted; internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 309–10, 699 A.2d 921 (1997). "A . . . plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . An understanding of the law in relation to the facts must include all relevant information concerning the sentence." (Internal quotation marks omitted.) *State* v. *Andrews*, 53 Conn. App. 90, 96, 729 A.2d 232 (1999) aff'd, 253 Conn. 497, 752 A.2d 49 (2000).

If the trial court does not accept the plea agreement made between the state and the defendant, it "shall inform the parties of this fact; advise the defendant personally in open court . . . [and] afford the defendant the opportunity then to withdraw his plea . . . . Where the word shall is employed in criminal procedural rules, it indicates that the requirements that follow are mandatory rather than directory. . . . The failure of the trial court to follow the mandatory provisions of the rules of criminal procedure constitutes plain error." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 778–79, 617 A.2d 933 (1992). "The failure of the trial court to afford this protection to the [defendant]

deprives him of the constitutionally guaranteed right to understand fully the consequences of his plea as a part of ensuring that the plea is voluntarily made." Id., 779.

Practice Book § 39-27 sets forth six grounds on which a defendant can withdraw his plea after it has been accepted by the court.[7] It is the defendant's contention here that he should be permitted to withdraw his pleas in accordance with § 39-27 (2) and (3) because the pleas were involuntary and the sentence he received exceeded the terms of the plea agreement. The plea agreement that the defendant entered into permitted the trial court to sentence him to a maximum two year period of incarceration. During sentencing, however, the defendant received eight years of incarceration, suspended after two years, to be followed by five years of probation. By sentencing the defendant to a period of probation, the defendant claims the trial court exceeded the terms of the plea bargain and should have afforded him the opportunity to withdraw his pleas.

The defendant principally relies on *State* v. *Reid*, 204 Conn. 52, 526 A.2d 528 (1987), and *Miller* v. *Commissioner of Correction*, supra, 29 Conn. App. 773. This reliance, however, is misplaced. In *Reid*, the defendant pleaded guilty to one count of robbery in the first degree

---

[7] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his . . . plea . . . after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea . . . was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

and one count of larceny in the first degree. In exchange for the plea, the defendant, who was cooperating with the prosecuting authorities, entered into an agreement with the state for a sentence of fifteen to eighteen years, with the right to argue for less at sentencing. *State* v. *Reid*, supra, 53. At the time of sentencing, the state recommended a sentence of fifteen years, the minimum under the plea agreement. Id. The sentencing judge, who was a different judge than the judge who had accepted the defendant's plea, sentenced the defendant to twenty years incarceration on each count, to run concurrently, suspended after ten years, plus five years of probation. Id. The defendant appealed from the judgment, claiming that the sentence did not comply with the terms of the plea agreement that he had entered into with the state. Id., 54.

In setting aside the judgment, our Supreme Court held: "The sentence imposed, while it carried a lesser period of immediate incarceration than the sentence recommended by the state's attorney, potentially required the defendant to serve five years more than he had bargained for. Further, the plea agreement did not include a period of probation and *there is nothing to indicate that a period of probation had been agreed to or anticipated by the defendant.*

"A suspended sentence and a period of probation are not inconsequential adjuncts of the sentence imposed that can be ignored or, like castor oil, be considered to have been administered for the defendant's own good. Probation is a criminal sentence and the conditions attached to probation involve serious restraints on a probationer's life-style, associations, movements and activities. . . . Violations of those conditions, furthermore, would expose the defendant to a sentence substantially in excess of the agreed upon sentence which induced his . . . pleas." (Citations omitted; emphasis added.) Id., 55–57.

This case, however, is distinguishable from *Reid*. In *Reid*, the plea agreement that the defendant entered into was a straight sentence, confinement for a period of fifteen to eighteen years. As our Supreme Court noted, "there [was] nothing to indicate that a period of probation had been agreed to or anticipated by the defendant." Id., 55. In contrast, the terms of the plea agreement in this case constituted a split sentence. During the colloquy between the court and the defendant to determine whether the pleas were being entered into knowingly and voluntarily, the defendant specifically agreed to an executed sentence of two years incarceration, plus a suspended sentence that could be as long as thirty years. According to Black's Law Dictionary, a suspended sentence is one that the "defendant is not required *at the time sentence is imposed* to serve the sentence." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990). While not required to serve a sentence when imposed, a suspended sentence contemplates the possibility that the defendant could be required to serve the sentence imposed at some later time. It is disingenuous for the defendant now to state that he thought that the maximum amount of time he could be incarcerated for was limited to two years when he specifically acknowledged that he could receive a suspended sentence of up to thirty years.

It should also be noted that the defendant, who is college educated, was represented by counsel during the plea canvass and sentencing hearing, and at no point during the proceedings did the defendant or his attorney indicate that the sentence was inconsistent with the defendant's understanding of the plea agreement. Further, General Statutes § 53a-28 (b), entitled "Authorized sentences," provides in relevant part: "[W]hen a person is convicted of an offense, the court shall impose one of the following sentences . . . (5) a term of imprisonment, with the execution of such sentence of imprison-

ment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge . . . ." See also General Statutes § 53a-28 (b) (6). It is not possible in Connecticut to receive a sentence suspended entirely or in part without a period of probation or conditional discharge. It is obvious that what the defendant bargained for was a sentence of up to thirty years, all but two years of which would be suspended. Section 53a-28 (b) (5) and (6) make clear that when the court suspends part of an imposed sentence, as occurred in this case and as agreed to by the defendant, the court must also sentence a defendant to a period of probation or a period of conditional discharge. It is clear that the defendant understood the terms of his pleas, and there is nothing in the record to indicate that they were not voluntarily entered into.

In *Miller* v. *Commissioner of Correction*, supra, 29 Conn. App. 773, the defendant entered into a plea agreement with the state, which provided that the maximum sentence he could receive would be fifteen years incarceration, with a maximum sentence of four years more than the incarcerated portion of the sentence suspended upon release, and three years probation. Id., 774. When sentenced, the defendant received a prison term of seventeen and one-half years, execution suspended after thirteen and one-half years, in compliance with the plea bargain. Id. The court, however, imposed four years of probation. Id. The defendant subsequently brought a petition for a writ of habeas corpus, claiming that the sentence he received exceeded the terms of the plea agreement. Id., 775. We affirmed the habeas court's decision that the trial court did not sentence the defendant within the parameters of the plea agreement when it sentenced the defendant to a period of four years probation when the agreement he had entered

into with the state provided for only three years of probation. Id., 780.

The present case is factually distinct from *Miller* in two respects. In *Miller*, the defendant objected to the sentence he received three weeks after it was imposed. Id., 775. Here, however, the defendant waited more than fourteen months before claiming that the sentence he received exceeded the terms of the plea agreement. "A swift change of heart is itself strong indication that the plea was entered in haste and confusion." (Internal quotation marks omitted.) *United States* v. *Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). A period of fourteen months can hardly be considered a "swift change of heart." Such a substantial delay in time between the defendant's sentencing and his challenge of the sentence's validity tends to reveal that the defendant expected a term of probation when he was sentenced.

Secondly, there was no dispute in *Miller* that the trial court exceeded the terms of the plea agreement when it sentenced the defendant to four years of probation when the agreement specifically limited the length of probation to three years. *Miller* dealt solely with the question of what remedy should be afforded when a court sentences an individual in excess of the terms of a plea agreement. There was no evidence that the defendant in *Miller* ever contemplated a probationary term that exceeded three years. That is not the case here. Since the pleas were accepted on January 5, 1998, the defendant twice signed "conditions of probation" forms attesting to the fact that he read and understood the conditions and that he would abide by them. On March 26, 1998, the defendant first signed the probation form agreeing to follow its terms for a period of five years.[8] It was not until fourteen months later that the

_____

[8] The defendant signed a second "conditions of probation" form on March 27, 2000.

defendant claimed that the probationary period violated the terms of the plea agreement. The defendant offers us no explanation for why he agreed to the terms of probation in March, 1998, and then waited until May, 1999, to claim that the plea agreement never contemplated a term of probation.

The state's argument rests on the holdings in two federal court cases, *Gammarano* v. *United States*, 732 F.2d 273 (2d Cir. 1984), and *Lucero* v. *Kerby*, 7 F.3d 1520 (10th Cir. 1993). While not binding on us, we find their rationale particularly persuasive in this case. See *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000). In *Gammarano* v. *United States*, supra, 273, the Second Circuit dealt with a situation similar to the one we face in this case. In *Gammarano*, the defendant and the United States' attorney entered into a plea agreement in which the government agreed not to oppose the defendant's request to receive a sentence of no more than two years of incarceration. Id., 274. When sentenced, however, Gammarano received five years of probation. Id. Gammarano did not challenge the terms of the sentence until two years later, after he violated the terms of his probation. Id., 275. He argued that his term of probation should be reduced to two years because it exceeded the terms of the plea agreement. Id. Rejecting Gammarano's argument, the Second Circuit stated that the "reasonable understanding and expectations of the parties, rather than the technical distinctions in semantics, control the question of whether a particular sentence imposed violates a plea agreement." Id., 276. The Second Circuit found that Gammarano's intention in entering into the plea agreement was his desire to avoid incarceration for a period of longer than two years. Id. In rejecting Gammarano's attempt to withdraw his plea, the court stated, "Gammarano does not offer any explanation for his delay in objecting to the five-year probation term. While

his silence [after imposition of sentence] does not constitute a waiver, it is evidence that his reasonable expectations had been fulfilled. . . . In short, his inaction indicates that the probation term satisfied his expectations under the plea agreement." (Citation omitted; internal quotation marks omitted.) Id.

Similarly, in *Lucero* v. *Kerby*, supra, 7 F.3d 1520, the Tenth Circuit upheld a District Court's decision to reject the defendant's argument that he should have been able to withdraw his guilty plea when the defendant received a sentence that exceeded the parameters of the plea agreement. In *Lucero*, the defendant entered into a plea agreement that stated that he would not be sentenced to more than three years of incarceration on a burglary charge and one year on a habitual offender charge. Id., 1521. When sentenced, however, the defendant received one year on the habitual offender charge and a nine year suspended sentence on the burglary charge on the condition that he be placed on probation for four years upon his release from incarceration. Id. After being released from prison, the defendant violated the terms of his probation. Id. The defendant's probation was subsequently revoked and he was sentenced to the nine years incarceration that was originally suspended, plus an additional year for being a "second habitual offender." Id. The defendant did not object to the sentence he received under the plea agreement until more than two years after it was imposed. Id. In rejecting the defendant's claim that the sentence violated the terms of the plea agreement, the Tenth Circuit held: "The fact that [the defendant] did not complain about his sentence originally or at the time his probation was revoked also lends credence to the conclusion that he reasonably believed the plea agreement's limitation of incarceration to four years or less applied only to his initial sentence, not to his subsequent probation violation sentence." Id., 1522.

As in *Gammarano* and *Lucero*, the defendant in this case did not initially object to the terms of the sentence. After being sentenced, the defendant met with a probation officer and signed the probation papers that stated the terms of his probation. It was not until more than fourteen months later that he claimed that the sentence he received exceeded the terms of the plea agreement. The defendant has not given us a plausible reason for his delay. He has offered us no evidence to suggest that he would have preferred to go to trial, nor has he claimed his innocence. After a complete review of the transcripts and proceedings, it is evident that the defendant's reasonable expectation in entering into the plea agreement was to avoid incarceration for a period of more than two years. That is precisely what he received. The executed part of the defendant's sentence was two years of incarceration. Whether the defendant would have to serve any additional time was completely within his control. He held the keys to his own freedom. Additionally, as we discussed previously, § 53a-28 (b) requires that when a court imposes a suspended sentence, the court is also required to impose a period of probation or a period of conditional discharge. At no point in time during the sentencing hearing did the defendant or his attorney object to the period of probation. It is clear that the defendant contemplated a period of probation when he entered into his plea agreement. Hence, we cannot conclude that the trial court abused its discretion when it denied the defendant's motion to withdraw his pleas of nolo contendere.

## II

The defendant next claims that the terms of his sentence violated General Statutes § 53a-29 (e). We agree.

The following additional facts are needed for us to resolve this claim. The defendant pleaded nolo contendere to two counts of risk of injury to a child in violation

of General Statutes (Rev. to 1995) § 53-21 and one count of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2). Although § 53a-29 (e) requires that the period of probation for violating subdivision (2) of § 53-21 be at least ten years, the defendant received eight years of incarceration, suspended after two, plus five years probation. It is the defendant's contention, and we agree, that this sentence was statutorily impermissible.

"An illegal sentence is one that exceeds the maximum statutory limits, does not satisfy the mandatory minimum, violates double jeopardy rights, is ambiguous or is internally contradictory." *State* v. *Mollo*, 63 Conn. App. 487, 491, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001). "The classic type of illegal sentence is one that is below the mandatory minimum." *State* v. *Daniels*, 207 Conn. 374, 387, 542 A.2d 306, after remand for articulation, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989).

In this case, the defendant's sentence did not satisfy the mandatory minimum sentence requirement that our legislature has established. Section 53a-29 (e) provides in relevant part: "The period of probation . . . shall not be less than ten years nor more than thirty-five years for conviction of a violation of subdivision (2) of section 53-21 . . . ." By sentencing the defendant to a five year period of probation, as opposed to ten, the court imposed an illegal sentence on the defendant.

In *Bozza* v. *United States*, 330 U.S. 160, 67 S. Ct. 645, 91 L. Ed. 818 (1947), the defendant was sentenced in accordance with a statute that provided for a mandatory minimum sentence of a fine of one hundred dollars *and* imprisonment. When initially sentenced, however, the court imposed only a term of imprisonment. Several hours later, the court recalled the defendant and

imposed the mandatory minimum fine as was required by the statute. In upholding the court's increased sentence to comply with the terms of the statute, the Supreme Court held: "If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all. . . . This Court has rejected the doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence. . . . The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. . . . In this case the court only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender. . . . The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense." (Citations omitted; internal quotation marks omitted.) Id., 166–67.

"*Bozza* thus stands for the proposition that a trial court not only can alter a statutorily-invalid sentence in a way which might increase its severity, but *must* do so when the statute so provides." (Emphasis in original; internal quotation marks omitted.) *Breest* v. *Helgemoe*, 579 F.2d 95, 99 (1st Cir.), cert. denied, 439 U.S. 933, 99 S. Ct. 327, 58 L. Ed. 2d 329 (1978). Additionally, Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition in an illegal manner."

The sentence imposed by the court failed to satisfy the statutory based minimum requirements created by § 53a-29 (e). As such, the sentence was illegal. The statutory based minimum requirements, however, fall within the terms of the plea agreement that the defen-

dant entered into. As we discussed in part I of this opinion, the defendant agreed to a two year executed sentence and an unexecuted sentence of up to thirty years. "[A defendant], who has been successful on appeal or has an illegal sentence vacated, should not be heard to assert that he should not be subjected to a proper reappraisal of statutory sentencing standards upon remand." (Internal quotation marks omitted.) *State* v. *Sutton*, 197 Conn. 485, 503, 498 A.2d 65 (1985), cert. denied, 474 U.S. 1073, 106 S. Ct. 833, 88 L. Ed. 2d 804 (1986).

The judgments are reversed only as to the defendant's sentence and the case is remanded for resentencing in accordance with the defendant's plea agreement and General Statutes § 53a-29 (e) so that the mandatory period of probation is imposed.

In this opinion the other judges concurred.