STATE OF CONNECTICUT *v.* EDWIN A.[1]
(AC 25397)

Flynn, Bishop and Gruendel, Js.

Argued April 28—officially released July 26, 2005

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Joseph Visone*, special public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *John C. Smriga*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Edwin A., appeals from the judgment of the trial court, rendered following the denial of his motion to withdraw his plea of guilty, convicting him of the crime of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On the basis of the record before us, we conclude that the court did not abuse its discretion in denying the motion. Accordingly, we affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. The defendant was charged, in a substitute information dated January 23, 2004, with three counts of sexual assault in the first degree in violation of § 53a-70 (a) (1), one count of attempt to commit sexual assault in the first degree in violation of General Statutes

§§ 53a-49 and 53a-70 (a) (1), five counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2),[2] three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), one count of attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-49 and 53a-71 (a) (1), and two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) for various acts allegedly committed during 1999 and 2000.[3] On January 26, 2004, pursuant to a plea agreement, the defendant entered an *Alford* plea[4] to one count of sexual assault in the first degree. The

[2] We note that those charges stemmed from the alleged actions of the defendant during the years 1999 and 2000.

[3] The defendant and the state both assert in their briefs that the defendant was charged with thirteen counts of sexual assault in the first degree and thirteen counts of risk of injury to a child. We note that those charges were pursuant to a substitute information dated June 16, 2003, which actually charged the defendant with thirteen counts of sexual assault in the first degree and *fourteen* counts of risk of injury to a child. Neither brief reveals what the record shows, however, namely, that this information was substituted on January 23, 2004. In the January 23, 2004 substitute information, the defendant faced a maximum sentence, if convicted on all counts and ordered to serve the sentences consecutively, of 180 years. Instead of risking the possible maximum sentence, the defendant pleaded guilty to only one count of sexual assault in the first degree for an incident that occurred in 2000, and was sentenced to seven and one-half years imprisonment with two and one-half years of special parole. As part of the plea bargain, the state dropped the remaining charges against the defendant. Further, the defendant was given the benefit of that sentence running concurrently with the five year sentence that he already was serving on an unrelated conviction.

We also note the minimum sentence for a conviction under General Statutes § 53a-70 (a) (1) as expressed in General Statutes (Rev. to 1999) § 53a-70 (b), as amended by Public Acts, Spec. Sess., June, 1999, No. 99-2, § 49, which provides in relevant part: "Sexual assault in the first degree is a class B felony for which two years of the sentence imposed may not be suspended or reduced by the court . . . and any person found guilty under this section shall be sentenced to a term of imprisonment and a period of special parole pursuant to subsection (b) of section 53a-28 which together constitute a sentence of at least ten years."

[4] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (accused may voluntarily, knowingly, understandingly consent to imposition of prison sentence while refusing to admit participation in crime).

court, *Damiani, J.*, accepted the guilty plea after canvassing the defendant.

On February 9, 2004, the defendant filed a motion to withdraw his plea, and the court conducted an evidentiary hearing on the motion on April 6, 2004. The defendant claimed that the court improperly canvassed him when accepting his guilty plea because it failed to ascertain whether he had been made promises in exchange for pleading guilty. Further, the defendant claimed that he, in fact, had been coerced by both his attorney and his father. At the conclusion of the evidentiary hearing, the court made the following relevant findings: "And there's no question in seeing you [the defendant] testify today, you're an intelligent, savvy young man. Your father came to speak to you, really at your request; he didn't barge in. He gave you advice, and you weighed the consequences. And rather than run the risk of going to trial and getting thirty years,[5] you agreed to take seven and [one] half years concurrent to the five you're doing, so it's really an additional two and [one] half years. So, I find you made the best of a bad decision. You answered my question at the plea canvass that you were not forced or threatened. Your father gave you advice, which you accepted, and which I think was the right decision you made. He did not overbear your will. [Your attorney] did not give you any advice about percentage of time. Your credibility on the stand regarding that is suspect. . . . So, for those reasons, your motion to withdraw your plea is going to be denied. I find it was voluntary, understandingly made with the assistance of competent counsel." The court then denied the defendant's motion to withdraw his plea and sentenced him to a term of seven and one-half years of imprisonment,

[5] We are unable to ascertain how the court derived that figure. Our calculations reveal that the defendant, if convicted on all counts and sentenced to consecutive terms, would have risked a maximum sentence of 180 years in prison.

followed by two and one-half years of special parole. The court ordered that the sentence run concurrent to the five year prison sentence that the defendant then was serving. This appeal followed.

On appeal, the defendant claims that the court abused its discretion when it denied his motion to withdraw his plea because there "was ample evidence produced during the evidentiary hearing that the defendant was coerced into pleading guilty."[6] The defendant contends that his father induced him to plead guilty.[7] The defendant argues that the evidence clearly established that his father told him that if he did not plead guilty, he would not give him money or visit him while he was in prison and that this amounted to "a promise or inducement to plead guilty" and that the court never inquired as to whether he was promised anything in exchange for his plea. The state responds that the court's canvass substantially complied with our rules of practice as did the denial of the defendant's motion to withdraw his guilty plea and that the court, therefore, did not abuse its discretion. We agree with the state.

[6] In his brief, the defendant states that his father "testified that the prosecutor had called [the father's] wife and asked her to ask [the defendant] to come to court and convince him to accept the state's offer." The defendant does not rely on that allegation in his brief but, instead, argues that his father's alleged statement foreclosing any future prison visits or gifts of money if the defendant did not accept the offered plea agreement constituted a promise that caused him to plead guilty, thus making the guilty plea involuntary. There is no evidence, however, that the defendant's father ever agreed either to visit the defendant in prison or to send him money if he did plead guilty. Additionally, the father testified that he did not threaten his son in any way to entice him to change his plea, and he did not promise him anything in exchange for his pleading guilty.

[7] The defendant also claims that he was coerced by his attorney, but he does not provide us with any analysis of that claim. Accordingly, we will not review that aspect of the defendant's claim and deem it abandoned. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State v. Hanson*, 75 Conn. App. 140, 141 n.3, 815 A.2d 139 (2003).

Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of guilty . . . without first determining . . . that the plea is voluntary and is not the result of force or threats or of *promises apart from a plea agreement. . . .*" (Emphasis added.) Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . . (2) The plea was involuntary . . . ."

"A . . . plea, once accepted, may be withdrawn only with the permission of the court. . . . The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § [39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Winer*, 69 Conn. App. 738, 744, 796 A.2d 491, cert. denied, 261 Conn. 909, 806 A.2d 50 (2002).

In *State* v. *Ocasio*, 253 Conn. 375, 380, 751 A.2d 825 (2000), our Supreme Court explained that "only substantial, rather than literal, compliance with § 39-20 is required in order to validate a defendant's plea of guilty." The test for substantial compliance with § 39-20 "is whether, in light of all of the circumstances, the trial court's literal compliance with § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." Id.

Here, before accepting the defendant's plea of guilty, the court specifically canvassed the defendant in relevant part:

"The Court: . . . . Have you taken any drugs, alcohol or medication today?

"The Defendant: No.

"The Court: You've talked to [your attorney] about this case, sir?

"The Defendant: Yes.

"The Court: And you're satisfied with his representation?

"The Defendant: Yes.

"The Court: You've also talked to your father today, am I right?

"The Defendant: Mm-hmm.

\* \* \*

"The Court: Now, by pleading guilty, sir, you're giving up certain rights. Your right to continue to plead not guilty, have a trial before a judge or a jury, to have an attorney assist you at that trial, present defenses, confront accusers, cross-examine witnesses, and you're giving up your right against self-incrimination. Do you understand that?

"The Defendant: Yes, sir. . . .

"The Court: Anybody force you or threaten you to plead guilty?

"The Defendant: No, sir.

\* \* \*

"The Court: [Do you] want me to accept your plea of guilty?

"The Defendant: Yes, sir."

Thereafter, the court determined that the defendant's plea was voluntary, and it accepted the plea.

The record reveals that the court thoroughly canvassed the defendant, and the defendant specifically

admitted that his plea was voluntary[8] and that he wanted the court to accept it. Reviewing the transcript of the evidentiary hearing on the defendant's motion to withdraw his plea, we can ascertain nothing that suggests that the defendant would have responded affirmatively if asked whether the plea resulted from *promises apart from the plea agreement.*[9] See *State* v. *Ocasio,* supra, 253 Conn. 381.

We have noted that in *Ocasio,* our Supreme Court held that only substantial, rather than literal, compliance with Practice Book § 39-20 is required in order to validate a defendant's plea of guilty. *State* v. *Ocasio,* supra, 253 Conn. 380. We reiterate that the test for substantial compliance is whether, in light of the circumstances, literal compliance would have made any difference in the trial court's determination of voluntariness. Id. We simply are not persuaded by the defendant's argument that his father's alleged "promise" that he would not visit or send the defendant money if he did not plead guilty rendered both his plea involuntary and the court's canvass inadequate. There absolutely is no indication that the defendant would have revealed that alleged "promise" to the court if it simply had asked him if his plea was the result of *promises apart from the plea agreement.* We note that it is significant that the defendant explicitly stated in response to the court's question that his plea was not the result of force or threats.

In light of the record in this case, we conclude that the court's literal compliance with Practice Book § 39-

[8] The court actually asked the defendant if anyone forced or threatened him to plead guilty. As we explained in *State* v. *Nelson,* 67 Conn. App. 168, 175, 786 A.2d 1171 (2001), however, "[when] the trial court's question that establishes this fact [of voluntariness] was shaped to elicit a negative response . . . [t]he difference is in style and not substance. Both queries established that the pleas were entered voluntarily and without force."

[9] We leave for another day the question of who, other than the prosecutor, could make *promises apart from the plea agreement* that might render a plea involuntary.

20 of our rules of practice would not have made any difference in the decision of the defendant to enter a guilty plea or in the court's determination that the defendant voluntarily entered a plea of guilty. We further conclude that the court's plea canvass substantially complied with Practice Book § 39-20, and, having substantially complied with the rules of practice, the court did not abuse its discretion in denying the defendant's motion to withdraw his plea.

The judgment is affirmed.

In this opinion the other judges concurred.